**UNITED STATES of America**

v.

**Herman SHEPPARD, Appellant.**

**No. 77–1364.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 13, 1977.

Decided Dec. 2, 1977.

Rehearing Denied Feb. 24, 1978.

Andrew S. Krulwich, Washington, D. C. (appointed by this court), for appellant.

Jonathan Lash, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., and John A. Terry and William D. Pease, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before BAZELON, Chief Judge, and WRIGHT and ROBB, Circuit Judges.

Opinion for the court filed by J. SKELLY WRIGHT, Circuit Judge.

J. SKELLY WRIGHT, Circuit Judge:

Defendant Herman Sheppard was convicted by a jury of kidnapping "for the purpose of rape and assault" in violation of 18 U.S.C. § 1201(a) (Supp. V 1975) and 22 D.C.Code § 2101 (1973), as well as related firearms offenses.[1] His argument on appeal of these convictions is that the kidnapping offense with which he was charged is a "sex offense," that corroboration of the complaining witness' testimony is therefore required, and that for want of such corroboration his convictions must be reversed. We disagree, and we affirm his convictions.

I

The central factual issue at trial, which distinguished the accounts of the complainant and the defendant as to the events in question, was whether the complainant had consented to driving the defendant across state lines into Maryland and engaging in sexual intercourse with him, or whether she had been forced to do so at gunpoint. Compare Tr. 34–47 (complainant's account) with Tr. 227–238 (defendant's account).

At trial the complainant testified that the defendant entered her car from the passenger side as she was preparing to drive away from the beauty parlor on her way home. According to her testimony, he held a gun covered by a shirt on her and told her to drive him where he instructed. Acting under instructions from him, she drove across the District line into Maryland where she turned down a dead-end street. The defendant then took over the driving and drove to a wooded area where, the complainant testified, she was raped in the woods by the defendant. She stated that after the rape she persuaded the defendant to give her the gun, on condition she would see him again. They left, this time with her driving. When they were stopped at a red light in front of a police car, the complainant put the car in reverse, slammed into the police car, and jumped out of her car screaming, "He's after me." The police arrested the defendant, who had not attempted to escape.

The defendant took the stand at trial and testified that he had met the complainant on the street and that she had invited him into her car to get a sandwich. He testified that they stopped at two stores, where he purchased food and drink, and then drove into Maryland where she consented to intercourse. According to his testimony, the intercourse took place in the back seat of her car. The gun, he stated, was hers, and had been in her purse all along.

Evidence was also introduced at trial that the complainant had telephoned her husband from the beauty shop at 3:00 P.M. to say that she would be home by 4:00 P.M., in time for him to drive their car to his job, Tr. 31, 114, 148, and that twigs and crumbled leaves were in her hair when she was interviewed by a detective at the local police station. Tr. 187. In addition, the manager of a liquor store testified that he recalled defendant coming into the store and insisting that he be served quickly because he had just met a woman with her own car. Tr. 226. The store manager did not know, however, what day it was that he had seen the defendant, and he stated that he remembered it to be before 3:00 P.M. Tr. 269.

II

In reaching its guilty verdict, the jury obviously chose to believe complain-

1. Use of a firearm in commission of a felony in violation of 18 U.S.C. § 924(c)(1) (1970); carrying a firearm during commission of a felony in violation of 18 U.S.C. § 924(c)(2) (1970); and carrying a pistol without a license in violation of 22 D.C.Code § 3204 (1973).

ant's account of the events in question rather than defendant's. Evaluations of credibility are, in our system, within the exclusive province of the trier of fact, who is in a position to take account of such factors as the demeanor and conduct of the witnesses. While our role as an appellate court requires us to determine whether the jury's conviction of the defendant is supported by substantial evidence, there is no general rule that the word of a victim, if believed by the jury, cannot constitute substantial evidence to support a conviction.[2]

■ In this case, however, the defendant seeks to invoke the special corroboration rule which has been applied by this court in sex offense cases. Under that rule evidence of the crime of probative value outside of the complainant's testimony has been required to support a guilty verdict. *See, e. g., United States v. Tremble,* 152 U.S.App.D.C. 363, 470 F.2d 1272 (1972); *United States v. Huff,* 143 U.S.App.D.C. 163, 442 F.2d 885 (1971). Although such corroboration is generally not required in kidnapping cases, it seems clear to us that if a corroboration rule for sex offenses is justified, then those justifications apply with full force in this case. First, the defendant was not charged separately with the crime of rape; the kidnapping and rape were viewed by both the prosecution and the District Court as involving one "transaction." Tr. 4–5. Moreover, to the extent we are concerned with such factors as jury outrage at testimony of sex offenses, the difficulty of defending against such charges, the dangers of falsification, and the severe penalties involved,[3] these factors appear to be of equal weight whether the defendant is charged with kidnapping for the purpose of rape—as he was here—or with assault with intent to commit rape, *see, e. g., Baber v. United States,* 116 U.S.App.D.C. 358, 324 F.2d 390 (1963), *cert. denied,* 376 U.S. 972, 84 S.Ct. 1139, 12 L.Ed.2d 86 (1964), or with rape itself, *see, e. g., United States v. Wiley,* 160 U.S.App.D.C.

281, 492 F.2d 547 (1973). Any corroboration rule governing the latter two offenses seems to us equally relevant to the first.

■ Under the corroboration rule established in this court, "independent corroborative evidence will be regarded as sufficient when it would permit the jury to conclude beyond a reasonable doubt that the victim's account of the crime was not a fabrication." *United States v. Gray,* 155 U.S.App.D.C. 275, 276, 477 F.2d 444, 445 (1973). The rule has been described as a "flexible" one, where "[t]he quantum of proof required will depend upon such factors as the age and impressionability of the complainant and the presence or absence of any apparent motive." *United States v. Wiley, supra,* 160 U.S.App.D.C. at 284, 492 F.2d at 550. Applying this corroboration requirement with all its flexibility, it might be possible to find sufficient corroboration of the complainant's testimony to sustain the conviction in this case. At trial the complainant testified that when she and the defendant turned down the dead-end street, a man was standing on the road in front of a house. According to her testimony, the man talked to the defendant, who then decided to take over the driving and ordered her to shift places. Tr. 40–41. That night the complainant retraced the day's journey with the police and directed them to the house where she testified that she and the defendant had encountered the man. Tr. 50.

The man living at that house, a Mr. Geffen, testified at trial that he had seen a couple stopped along his street on the day he was interviewed by the police, that he had spoken to the man, and that he observed the man go around the car to shift seats with the woman. Tr. 120–127. Defendant, however, testified that he had never seen Mr. Geffen, that they did not stop at a location near Mr. Geffen's house, and that he did not get out of the car at that

---

2. *See* 7 J. Wigmore, Evidence § 2034 at 259 (3d ed. 1940); Note, *The Rape Corroboration Requirement: Repeal Not Reform,* 81 Yale L.J. 1365 (1972).

3. *See* Note, *supra* note 2, 81 Yale L.J. at 1373.

time. Tr. 249. Thus Mr. Geffen's testimony tends to confirm the complainant's account rather than the defendant's and, when coupled with the presence of twigs in the complainant's hair when she had just come from the beauty parolor,[4] might be considered sufficient to "permit the jury to conclude beyond a reasonable doubt that the victim's account of the crime was not a fabrication."

We recognize, however, that this is at best very weak corroboration of the complainant's testimony, and that it adds nothing to the essential disagreement between complainant and defendant as to whether the complainant consented to the trip and to the intercourse. As a result, we do not rest our affirmance of defendant's conviction on this basis. Rather, it is our view that corroboration of the complainant's testimony should no longer be considered a requirement for conviction in sex offense cases.[5]

## III

In recent years the requirement of independent corroboration in sex offense cases has come under increasing attack,[6] and the trend has been toward modification and abandonment of the rule in the minority of jurisdictions which have required such corroboration.[7] The requirement is grounded not in the common law,[8] which limited the corroboration requirement to charges of perjury,[9] but rather in the view that rape is a "peculiar" offense and that exceptional categorical rules limiting convictions are therefore needed.[10] Thus it was said that because charges of rape may easily be fabricated,[11] and because juries may be enraged by testimony of sexual assaults,[12] and

4. As noted earlier, the complainant testified that the intercourse took place in the woods, where she was forced to lie on the ground, thus explaining the presence of twigs in her hair only hours after she left the beauty parlor. The defendant, on the other hand, testified that they engaged in intercourse on the back seat of the complainant's car, and that he never saw the complainant leave the car until she approached the police officers. Tr. 234, 241.

5. Our view of the continued viability of this court's corroboration requirement renders it unnecessary for us to decide whether the elimination of the corroboration requirement by the District of Columbia Court of Appeals, see *Arnold v. United States*, 358 A.2d 335 (D.C.C.A. 1976) (*en banc*), governs trials for D.C.Code offenses conducted in the United States District Court, see *United States v. Belt*, 169 U.S. App.D.C. 1, 514 F.2d 837 (1975) (*en banc*).

6. *See, e. g.*, Note, *supra* note 2; Ludwig, *The Case for Repeal of the Sex Corroboration Requirement in New York*, 36 Brooklyn L.Rev. 378 (1970); Lear, *Q. If You Rape a Woman and Steal Her TV, What Can They Get You For in New York? A. Stealing Her TV*, N.Y. Times, Jan. 30, 1972, § 6 (Magazine) at 11. *See also* Note, *Towards a Consent Standard in the Law of Rape*, 43 U.Chi.L.Rev. 613 (1976).

7. As of 1972 only seven jurisdictions adhered to a general rule requiring corroboration of the complainant's testimony to sustain a conviction for rape. The District of Columbia was one of only two of these jurisdictions—the other being Nebraska—to impose this rule by judicial decision. Thirty-five jurisdictions had no corrobo-

ration requirement at all, while eight took an intermediate position requiring limited corroboration or corroboration only in certain circumstances. *See* Note, *supra* note 2, 81 Yale L.J. at 1367–1368. New York's corroboration rule was modified in 1972, *see* N.Y.Sess.Law News, 195th Sess., June 10, 1972, at 811, and the District of Columbia eliminated the requirement of corroboration of the testimony of mature complainants with respect to sexual assaults in 1976, *see Arnold v. United States, supra* note 5. And § 1646(b) of the Criminal Code Reform Act of 1977, S. 1437, would eliminate the corroboration requirement with respect to rapes governed by federal law, *see* 18 U.S.C. § 1153 (1970).

8. *See* 7 J. Wigmore, *supra* note 2, § 2061 at 342.

9. *Id.*, § 2040(a) at 273.

10. *See* Berger, *Man's Trial, Woman's Tribulation: Rape Cases in the Courtroom*, 77 Colum. L.Rev. 1, 7–10 (1977); Note, *supra* note 2, 81 Yale L.J. at 1384–1386.

11. *See State v. Connelly*, 57 Minn. 482, 486, 59 N.W. 479, 481 (1894) ("young girls, like older females, sometimes concoct an untruthful story to conceal a lapse from virtue"); Ploscowe, *Sex Offenses: The American Legal Context*, 25 Law & Contemp.Prob. 217, 222–223 (1960).

12. *See Davis v. State*, 120 Ga. 433, 435, 48 S.E. 180, 182 (1904) ("When a charge of this sort is made, the people, and the jurors likewise, are

because a defense to a rape charge is difficult to establish,[13] a corroboration rule is necessary in all such cases to protect defendants against unjust convictions. More recent studies, however, suggest that the factors invoked in support of the corroboration requirement do not justify that rule: strong disincentives exist to reporting a rape, whatever the individual motive;[14] juries generally tend to view rape charges with suspicion;[15] and convictions in the absence of aggravating circumstances are extremely rare.[16]

█ The corroboration requirement poses a potentially severe obstacle to legitimate convictions for sex offenses.[17] Operation of the rule serves to foreclose jury consideration of cases in which a highly credible complainant prosecutes charges, on the basis of her testimony alone, against a defendant whose account of the events is clearly less credible. And the mere existence of the rule may encourage victims never to report, and prosecutors never to bring charges for, rapes in which independent corroboration is absent or marginal. Elimination of the corroboration requirement, however, hardly leaves defendants unprotected against unjust convictions. The defendant is entitled to all of the established constitutional safeguards of our criminal justice system. Moreover, it is the trial judge's responsibility to charge the jury as to the Government's burden of proving all elements of the offense beyond a reasonable doubt. Where the motivation of the complainant in bringing the charge is an issue, as in a case where the defendant contends that she consented to the intercourse, the defense attorney is free to emphasize to the jury the dangers of falsification, and the judge should instruct the jury as to those dangers and the difficulty of establishing consent. Finally, protection against unjust convictions on a case-by-case basis is afforded by the general rule that

apt to let their indignation get the better of their judgment, and convict upon evidence which does not authorize it."); 3A J. Wigmore, Evidence § 924a at 736 (Chadbourn rev. 1970).

**13.** Lord Chief Justice Hale described rape as "an accusation easily to be made and hard to be proved, and harder to be defended by the party accused, tho never so innocent." 1 M. Hale, The History of the Pleas of the Crown 635 (1680). *See also* Note, *Corroborating Charges of Rape,* 67 Colum.L.Rev. 1137, 1139 (1967).

**14.** *See* Note, *supra* note 2, 81 Yale L.J. at 1374–1375 & n.71 ("it seems likely that a woman bent upon blackmail or revenge would be inclined to choose a more effective and less embarrassing tactic").

**15.** *See* H. Kalven & H. Zeisel, The American Jury 249–254 (1966) (suggesting that juries have in effect created a defense of contributory behavior by the complainant); statement of N.Y.C. District Attorney J. Litman, *quoted in* Lear, *supra* note 6, at 11.

Where a black man is tried for rape of a white woman before a predominantly white jury, fear of an emotional reaction by the jury may be more legitimate. Between 1930 and 1968, 455 men were executed for rape; of these 405, or 89%, were black. Bureau of Prisons, National Prisoner Statistics No. 45, Capital Punishment 1930–1968, at 10–11 (1969).

There are means more appropriate and effective than the corroboration requirement, however, for dealing with these relatively infrequent cases. Congress has long provided a criminal sanction for excluding blacks from jury service because of their race; and a criminal conviction of a black cannot stand under the equal protection clause of the Fourteenth Amendment if it is based on an indictment of a grand jury or a conviction by a petit jury from which blacks were excluded by reason of their race. If the prejudice against the defendant is localized, he may be entitled to a change of venue. Where an obviously biased jury has failed to believe strong evidence of innocence, the presiding judge or the appellate court can and must set aside the verdict. Thus, the corroboration requirement is neither the only nor the best means for dealing with the problem of a racially inflamed jury. Note, *supra* note 2, 81 Yale L.J. at 1380–1381 (footnotes omitted).

**16.** In the study conducted by Kalven and Zeisel, for example, the jury found defendants guilty in only three of 42 cases of non-aggravated rape, while the judge would have convicted in 22 of these cases. H. Kalven & H. Zeisel, *supra* note 15, at 253–254.

**17.** *See* Note, *supra* note 2, 81 Yale L.J. at 1370 & n.38 (pointing out that under New York's former strict corroboration requirement there were 1,085 arrests for rape in New York City in 1969 and only 18 convictions).

judgments of acquittal or reversals of convictions must be granted where substantial evidence does not exist to support a guilty verdict, whether or not independent corroboration is technically present.

In this case, taking account of all the evidence presented and without regard to the corroboration requirement, it seems clear to us that the jury's decision to convict the defendant was supported by substantial evidence. Accordingly, the convictions appealed from are

*Affirmed.*[18]

18. Since this opinion rejects the need for corroboration of rape required in some earlier opinions of this court, it has been circulated to the whole court prior to issuance. The judges of this court in regular active service have voted unanimously against hearing this case *en banc.*