Gary M. ROBINSON, Appellant,

v.

UNITED STATES, Appellee.

No. 80–1204.

District of Columbia Court of Appeals.

Submitted July 1, 1982.

Decided Oct. 27, 1982.

Eugene Bond, Washington, D.C., was on the brief for appellant.

Stanley S. Harris, U.S. Atty., and John A. Terry, Asst. U.S. Atty., Washington, D.C., at the time the brief was filed, Michael W. Farrell, Mark J. Biros, and Margaret Poles Spencer, Asst. U.S. Attys., Washington, D.C., were on the brief for appellee.

Before NEWMAN, Chief Judge, and KELLY and PRYOR, Associate Judges.

PRYOR, Associate Judge:

This is an appeal from a conviction of two counts of incest pursuant to D.C.Code 1981, § 22–1901. Appellant argues (1) that the

preindictment delay violated his constitutional rights; (2) that the two counts of incest were improperly joined; and (3) that the trial judge erred in failing to instruct the jury, sua sponte, that corroboration of the testimony of the complainant was required.[1] After careful consideration of these claims in light of the record before us, we find them unpersuasive and accordingly affirm the convictions.

## I

At trial the complainant testified that in the early part of 1974, she was living with her mother, Caroline Banks, and her two stepsisters in Southeast Washington. According to her testimony, during that time, when she was approximately 16 years old, her father, Gary Robinson, appellant herein, had sexual relations with her on three occasions. Then in June 1975, she left her mother's apartment and moved in with her father, who, she testified, engaged in sexual intercourse with her "[w]henever he felt like it." On August 23, 1975, as the complainant was walking home one evening with her boyfriend, her father approached them and started beating both her and her boyfriend. Robinson then took her to his house and forced her to have relations with him that night and again the next morning. On August 24, 1975, she told her aunt and her mother what had occurred and her mother called the police. Appellant was arrested on August 25, 1975, but released the following day when the United States Attorney's Office "no papered" the charge.

The complaining witness then returned to her father's residence where she lived for approximately four years and continued a sexual relationship with him. On August 14, 1979, when she was living with her aunt, she went to Howard University Hospital because she suspected she was pregnant. She testified that she had recently submitted to her father approximately one week earlier. A member of the hospital staff prescribed medicine and told her to

return the following day for a test, which she did. She also asked to see a psychiatrist or social worker because she wanted to kill herself. After she talked with two nurses about her relationship with her father they called the police.

The complainant's mother, Caroline Banks, testified that on August 24, 1975, her daughter came over to her house "real nervous and crying and shaking" and had a black eye and bruises on her shoulder. Ms. Robinson told her mother that her father had had sexual intercourse with her two days earlier. Ms. Banks also testified that several years later in August 1979, her daughter came to her house after visiting Howard University Hospital, where she had received some pills. She had lost a lot of weight and said that she did not want to continue living with her father. She explained to her mother that she had told the people at the hospital, "[I]f somebody don't help me, . . . I will probably wind up killing myself." Ms. Banks encouraged her daughter to return to the hospital the next day.

Two employees of the hospital testified that Ms. Robinson, appearing nervous and frightened, had visited the hospital on August 14, 1979, and told them her father was forcing her to have sexual relations with him. An employee then contacted the police.

Robinson testified in his own behalf that he believed the complainant was his daughter. He denied that he had engaged in any sexual relationship with her. He explained that walking home with his cousin on the evening of August 24, 1975, he encountered his daughter with a young man. He shoved the young man and told him to stay away from his daughter, then grabbed his daughter and hit her when he thought she was lying to him. She ran to the house where Robinson caught up with her and argued with her. Then she went to her bedroom. He and his cousin sat on the porch drinking beer and then went to bed. The next morn-

---

1. Appellant also raises several other contentions which we similarly find to be unpersuasive: (1) that the admission of photographs was error; (2) that one of the trial court's instructions was erroneous; (3) that failure to suppress certain statements made by appellant was error; and (4) that the evidence was insufficient to support the conviction.

ing Robinson took his cousin home to Vienna, Virginia. He also explained that on August 8, 1979, he had left the house early in the morning with his friend, Sarah Briggs. He thought that the reason he was arrested for the first incident was that Ms. Banks had wanted to have him return a Cadillac that she had once given him and "have [him] locked up for a while." Robinson's cousin corroborated Robinson's testimony concerning the events of August 23–24, 1975. Ms. Briggs testified that she was Robinson's "woman" and had spent the night of August 7–8, 1979, with him and had left early the next morning with him.

## II

■ First, appellant contends that the period of delay between the first incident, known to the government on August 24, 1975, and his subsequent indictment for that offense over four years later on December 12, 1979, violated his Sixth Amendment right to a speedy trial. While this period merits scrutiny, appellant mistakenly pursues a Sixth Amendment analysis. As the Supreme Court recently held, the period between dismissal of the first charge against a defendant and indictment falls outside the speedy trial clause. *United States v. MacDonald,* —— U.S. ——, 102 S.Ct. 1497, 1503, 71 L.Ed.2d 696 (1982); *see United States v. Marion,* 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468 (1971); *Johnson v. United States,* D.C.App., 434 A.2d 415, 419 (1981); *but cf. Branch v. United States,* D.C.App., 372 A.2d 998 (1977) (four and one-half month delay between dismissal of charge and reindictment on same charge counted for speedy trial clause purposes where dismissal unrelated to investigative need on the original charge). Rather, the Due Process Clause of the Fifth Amendment provides the appropriate analysis. Appellant must demonstrate that he suffered prejudice and that the government's reasons were unjustified. *See United States v. Lovasco,* 431 U.S. 783, 790, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1977); *United States v. Marion, supra* 404 U.S. at 325–26, 92 S.Ct. at 465–466; *Asbell v. United States,* D.C.App., 436 A.2d 804,

812 (1981). As the Supreme Court stated in *United States v. Lovasco, supra* 431 U.S. at 790, 97 S.Ct. at 2048:

> Thus, *Marion* makes clear that proof of prejudice is generally a necessary but not sufficient element of a due process claim, and that the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused.

■ Appellant asserts that he suffered prejudice from the obvious difficulty to him and to possible defense witnesses of trying to recall events that occurred 54 months previously. However, he fails to name any specific witnesses whose memories have faded or who are no longer available, and, in fact, fails to indicate any specific examples of prejudice. The bare assertion that faded memories of witnesses must necessarily have resulted from a lengthy delay is insufficient to establish prejudice. *United States v. Marion, supra* 404 U.S. at 325–26, 92 S.Ct. at 465–466; *Hurt v. United States,* D.C.App., 314 A.2d 489, 493–94 (1974).

■ The government argues that its reason for the delay in the indictment of Robinson for the August 23–24, 1975, offense was to develop additional evidence. It was asserted at the pretrial hearing on the motion to dismiss this count that the complainant recanted her grand jury testimony concerning this incident after the police arrested Robinson for it. It was not until his daughter testified before the grand jury investigating the August 1979, incident that the grand jury chose to indict him for both offenses. To avoid charging an innocent person, the government, of course, may proceed cautiously and carefully with arrest or indictment. *See Lovasco v. United States, supra* 431 U.S. at 791–96, 97 S.Ct. at 2049–2051. In this case the delay appears to have resulted from the lack of sufficient evidence at an earlier stage to indict Robinson. That being so, the delay in bringing the indictment does not appear to be unjustified. Nor has Robinson shown any specific instances of prejudice resulting from the delay. Accordingly, we conclude that the delay between the alleged date of the

first offense and Robinson's indictment for it did not violate his Fifth Amendment due process rights.

## III

■■■ Next, appellant argues that joinder of the two charges was improper.[2] We have consistently recognized a presumption in favor of joinder of offenses of a similar character to conserve state funds, limit inconvenience, and avoid delay. *(Thomas) Arnold v. United States,* D.C.App., 443 A.2d 1318, 1322 (1982). However, a trial judge is under an obligation, pursuant to Super.Ct. Cr.R. 14, to sever separate counts in an indictment unless "(1) *the evidence as to each offense is separate and distinct, and thus unlikely to be amalgamated in the jury's mind into a single inculpatory mass,* or (2) the evidence of each of the joined crimes would ·be admissible at the separate trial of the others." *Id.* at 1323 (emphasis in original). We will reverse a trial court order denying severance only for an abuse of discretion. *Id.* at 1322; *Winestock v. United States,* D.C.App., 429 A.2d 519, 526–27 (1981); *(James E.) Arnold v. United States,* D.C.App., 358 A.2d 335, 339 (1976) (en banc). To meet that showing, the defendant must present "the most compelling prejudice ... from which 'the court would be unable to afford protection' if both offenses were tried together." *Winestock v. United States, supra* at 527 (citation omitted). Ruling on appellant's pretrial motion to sever pursuant to Rule 14, the trial court viewed the counts in the indictment as "two

separate incidents of charges which can be clearly articulated as to their difference" and under "specific evidence as to each of the incidents." The court also concluded that the proffered testimony of "a continuous course of conduct between the two specific instances alleged" would negate any prejudice to Robinson. Appellant did not renew his motion for severance at trial and only implicitly raises it on appeal in conjunction with his Rule 8 claim for severance.

■■■ In this case we conclude that the evidence of each offense is separate and distinct. The charges concern events four years apart for which the circumstances were distinctly different and for which separate evidence was presented to the jury. Since it is unlikely that the jury would amalgamate the evidence of the offenses to convict the defendant, we do not consider the trial court's denial of the motion to sever an abuse of discretion.

## IV

Finally, appellant argues that the trial court erred in failing to instruct the jury, sua sponte, that corroboration [3] of the complainant's testimony was required before conviction of incest. In *(James E.) Arnold v. United States, supra,* this court dispensed with the requirement for corroboration of a mature female victim of rape or its lesser included offenses.[4] *Id.* at 344. In doing so, we explicitly rejected the presumption that the testimony of a mature female victim of rape and other sex-related offenses was so

**2.** Appellant confuses misjoinder under Super. Ct.Cr.R. 8(a) with prejudicial joinder under Rule 14. Rule 8(a) provides, in pertinent part, that "[t]wo or more offenses may be charged in the same indictment ... if the offense charged ... are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." *Since appellant failed to make a timely objection and since we do not find plain error in the instant joinder, we need not address appellant's Rule 8(a) argument. See Bittle v. United States,* D.C.App., 410 A.2d 1383, 1385 n. 2 (1980); *Evans v. United States,* D.C.App., 392 A.2d 1015, 1022–23 (1978).

**3.** Corroboration means direct or circumstantial evidence of facts and circumstances which tend to support, but are independent of, the complainant's testimony. Criminal Jury Instructions for the District of Columbia, No. 4.78 (3d ed. 1978); *Sweet v. United States,* D.C.App., 449 A.2d 315 (1982).

**4.** As of this year two jurisdictions, Idaho and Nebraska, still require corroboration in all sexual assault cases, while seven (including this jurisdiction) require it only in certain limited factual circumstances. The other jurisdictions do not require any form of corroboration. *See Fitzgerald v. United States,* D.C.App., 443 A.2d 1295, 1306 n. 4 (1982) (en banc) (Newman, C.J., dissenting).

inherently incredible as to require corroboration. *Id.* Thus, we explicitly rejected the common justification for the corroboration requirement, such as: (1) the dangers of fabrication, (2) the difficulty of establishing a defense, and (3) the possibility that testimony of sexual assaults may enrage the jury.[5]

We recently had occasion to consider the scope of *(James E.) Arnold* in *Sweet v. United States,* D.C.App., 449 A.2d 315 (1982). In *Sweet,* this court held that "where the complainant is a mature female, the requirement of corroboration is abrogated in prosecutions for assault with intent to commit sodomy." *Id.* at 325. We explained that the court in *(James E.) Arnold,* which dispensed with the corroboration requirement for rape of a mature female (or its lesser included offenses), intended to dispense with it for the offense of assault with intent to commit sodomy perpetrated against a mature female since they are "virtually identical sexual assault crimes" and since a mature female alleging she was assaulted with intent to commit sodomy is equally as credible as someone alleging she was raped. *Id.*

■ The crime of incest involves the same bodily invasion, *i.e.,* sexual intercourse, as that of rape, but also requires two additional elements: (1) that the victim was related to the defendant within the third degree of consanguinity; and (2) that the defendant knew the victim was so related at the time of sexual intercourse.[6] Lacking, however, from the elements of incest

but required for rape is a showing that "the act was committed forcibly and against the will of the complaining witness." Criminal Jury Instructions for the District of Columbia, No. 4.74 (3d ed. 1978). It is in proof of this latter element that questions concerning the credibility and motivation of the complaining witness may be especially pertinent. *See (James E.) Arnold v. United States, supra* at 344; *United States v. Sheppard,* 186 U.S.App.D.C. 283, 285, 569 F.2d 114, 118 (1977).

■ We perceive the need for corroboration of a mature female alleging incest to be no more compelling than for a mature female alleging rape. In fact, the need for corroboration may be less compelling since consent is not a defense to incest. The possibility of fabricating a charge of incest, unlike fabricating a charge of rape, after consensual intercourse, is nonexistent since with or without consent, the sexual act among certain related parties constitutes incest. Thus, we see nothing in *(James E.) Arnold* that would cause us to view a mature female complaining of incest more suspiciously than one complaining of rape. Accordingly, we conclude that *(James E.) Arnold* intended to dispense with the corroboration requirement in prosecutions for incest where the victim is a mature female.[7]

■ Having so found, we must consider whether the complainant was a mature female. At the time of the first offense, she was approximately 16 and a half years old. While age alone is not determinative of maturity, it is an important fac-

**5.** For a discussion of these common justifications for a corroboration requirement in sex crimes *see* Note, *The Rape Corroboration Requirement: Repeal Not Reform,* 81 YALE L.J. 1365, 1373–1384 (1972).

**6.** The trial judge instructed the jury on the two counts of incest as follows:

Now the essential elements of the offense of incest charged in this case, and of which the government must prove beyond a reasonable doubt, are as follows:

One, that the defendant had sexual intercourse with [the complainant] on or about August 24th, 1975, insofar as count one is concerned. And that he had sexual intercourse with [the complainant] on or about

August 8th, 1979, with respect to the charge in count two.

Second, that [the complainant] was related to the defendant within the third degree of consanguinity, that is, his daughter.

Three, that at the time the defendant had sexual intercourse with [the complainant], he knew she was his daughter.

**7.** We note that the D.C. Circuit had previously required corroboration in incest cases. *See United States v. Ashe,* 138 U.S.App.D.C. 356, 427 F.2d 626 (1970). However, the court eliminated the corroboration requirement in all sex offense cases in *United States v. Sheppard, supra* at 284, 569 F.2d at 117.

tor. *Fitzgerald v. United States,* D.C.App., 443 A.2d 1295, 1306 n. 4 (1982) (en banc). However, a "victim, though chronologically an adult, may be in reality as immature as a child." *(James E.) Arnold v. United States, supra* at 345 (Nebeker, J., concurring). Where there is no evidence of mental or social immaturity "militating against independent credibility," the trial judge may rule that the complainant is a mature female for purposes of corroboration. *See Davis v. United States,* D.C.App., 396 A.2d 979, 980 (1979). In this case, neither party raised the issue of the complaining witness' maturity, thereby precluding explicit trial court consideration of that question.[8] However, we find that the record evidences a sufficient degree of maturity for us to determine, as a matter of law that she was a mature female. For instance, according to testimony of a defense witness, at the time of the first offense, the complainant had a boyfriend with whom she had had sexual relations. Evidence that she often stayed at her aunt's house or her father's girlfriends' homes after she moved out of her mother's house and into her father's house, indicates a life in which she often assumed a lot of responsibility for herself. Accordingly, we hold that the trial court did not err in failing to instruct the jury, sua sponte, that corroboration of the complainant's testimony was necessary.

*Affirmed.*

---

**8.** The only discussion of the complainant's age came in a conference at the bench concerning jury instructions in which the court substituted the word "daughter" in an instruction on incest proposed by the prosecutor for the words "female child." In addition, the court instructed the jury that "the age of the alleged victim in a charge of incest is immaterial and is not an element of the offense. . . ."