**Ervin STERLING, Appellant,**

v.

**UNITED STATES, Appellee.**

**James HAMPTON, Jr., Appellant,**

v.

**UNITED STATES, Appellee.**

**Michael J. EPPS, Appellant,**

v.

**UNITED STATES, Appellee.**

**Nos. 93–CF–1035, 93–CF–1112, 93–CF–961.**

District of Columbia Court of Appeals.

Argued Nov. 28, 1995.
Decided March 20, 1997.
As Amended on Denial of Rehearing
May 13, 1997.

---

Peter N. Mann, Ashton, MD, for appellant Sterling.

Robert H. Haas, Baltimore, MD, appointed by the court for appellant Hampton.

Paul J. Riley, appointed by the court for appellant Epps.

Lisa A. Hertzer, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Roy W. McLeese, III, and Geoffrey Bestor, Assistant United States Attorneys, were on the brief, for appellee.

Before WAGNER, Chief Judge, and STEADMAN and KING,* Associate Judges.

WAGNER, Chief Judge:

Appellants, Ervin Sterling, James Hampton and Michael Epps, were charged with assault with intent to kill while armed with a stick and shod foot (D.C.Code §§ 22–501, –3202 (1996)), mayhem while armed with a stick and shod foot (D.C.Code §§ 22–506, –3202 (1996)) and malicious destruction of property (D.C.Code § 22–403 (1996)). At a joint trial, appellants were convicted of assault with a dangerous weapon (shod foot), mayhem while armed (shod foot), and malicious destruction of property. Each of the appellants argues for reversal on the grounds that: (1) the evidence was insufficient to support the convictions and (2) the trial court erred in denying their motions for new trial on the grounds that the government failed to disclose *Brady*[1] material until after the trial. Hampton and Sterling also contend that the trial court erred in allowing the government to impeach its own witness and in failing to give a cautionary instruction. Hampton argues that the trial court erred in denying his motion for severance. All three appellants contend that their convictions of mayhem while armed and assault with a dangerous weapon merge.[2] The government concedes, properly, that the evidence was insufficient to support the convictions for felony malicious destruction of property, although it takes the position that misdemeanor destruction of property was proven. We agree, and remand with instructions to vacate the felony property offense, enter judgments of convictions for misdemeanor destruction of property, and resentence accordingly. The government further states that it does not contest in this case the claim of merger of the convic-

tions for assault with a dangerous weapon (ADW) with the convictions for mayhem while armed as applied to all three appellants, and we therefore remand with instructions to vacate the ADW convictions. We affirm as to all the remaining counts.

## I. *Evidence at Trial*

On the afternoon of September 8, 1990, David Moore left his girlfriend's home in the 600 block of Newton Street, N.W. in his 1975 Chevrolet Impala. He had not gone very far when he swerved to avoid hitting a girl who was crossing the street, lost control of his car and hit Hampton's 280Z. Frightened of the consequences, Moore left the scene of the accident and went to his mother's house in the 1100 block of Sixth Street, N.W. He told his brother, Jeffrey, what had happened and asked him to accompany him to "try to take care of the matter." Jeffrey agreed, but Moore did not wait for him because he was anxious to return to the scene to tell Hampton about the accident.

Moore went back to the area of the accident, intending to tell Hampton that he had hit his car and would pay for any damage. Before he could accomplish his mission, as he walked up Otis Street toward Georgia Avenue, two men ran out of an alley toward him. Sensing that someone was behind him, he turned and saw Sterling, who is Hampton's brother. Moore saw Sterling hit him in the head with a two-by-four stick which caused Moore to black out. Moore's next memory was of waking up in the Washington Hospital Center.

Several people witnessed the assault and testified at trial. Annie Towns testified that she watched the incident from her front porch from about one car length away. She recalled Sterling asking Moore to "give me your keys." She identified Sterling and Hampton as two of the three individuals whom she saw beat Moore. Towns testified that she saw them hitting, jumping on and kicking Moore in the head. Towns described

---

* Judge King concurs in the result.

1. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

2. Hampton's unopposed motion to adopt this argument raised by Epps in his brief was granted by order entered on August 17, 1995, and a like

the third assailant as heavy and dark skinned. Towns did not recall seeing Epps; however, she went into her house to call the police and then ran to different locations in the house to get the best vantage point from which to watch the attack. James Leary also watched the assault from a few feet away and then from the Towns' house. Leary identified all three appellants as Moore's attackers. According to Leary, appellants kicked Moore while he was on the ground unable to move.

Douglas Bowman, who lived across the street and two doors down from Ms. Towns, identified Sterling and Epps as the assailants. He testified that Sterling asked Moore about Hampton's car and Moore replied, "Man, f— that car." Bowman said that Sterling punched Moore in the face and hit him with a stick and that Epps stomped on Moore's head with heavy brown boots. He also testified that Sterling stopped Epps from kicking Moore, telling him "that's enough." Bowman testified that Hampton, whom he described as like a brother to him, was not involved in the assault on Moore. Bowman identified someone named Lando as the third participant in the assault.[3]

Dominic Bowman, Douglas's brother, also witnessed the assault. He testified that Epps was kicking, hitting and stomping on Moore's head with boots and that Sterling hit Moore with a stick. Dominic Bowman also testified that Hampton was not involved in the assault.

Moore's head and face were swollen, and he was bleeding from the mouth and ears and having convulsions. A neighbor finally intervened, and the assault ended. Leary testified that he then saw the appellants approach Moore's car with sticks, and he heard Hampton say "we done F'd him up now. Now we're gonna do the car in." Mr. Leary saw appellants break Moore's side window, front windshield, and headlight. Jeffrey Moore, the victim's brother, testified that only the left front fender on Moore's vehicle was damaged after the accident with the

280Z, but following the assault, Moore's car was not driveable and had to be towed away.

Dr. Bikram K. Paul, a surgeon with the Med Star shock trauma unit at the Washington Hospital Center, treated Moore immediately after the assault. He testified that Moore had "a very serious, potentially life-threatening ... brain injury," and he remained in a coma for nine days. Moore was placed on a respirator immediately and given medication to reduce his brain activity and to control swelling. Tests revealed that Moore experienced a cutting injury with some bleeding on the upper and lower part of his brain. Dr. Paul testified that, left untreated, Moore was at risk of complete brain death.

Dr. Andrew McCarthy, director of the head injury unit at the National Rehabilitation Hospital, also testified as an expert in neurology and the treatment of brain injury resulting from trauma. He first treated Moore twelve days after the assault. He testified that Moore's injuries had impaired his ability to cope with outside stimuli such as light and noise, and his short-term memory was impaired. He also testified that Moore experienced permanent injury to the nerve fibers of his brain. Dr. McCarthy testified that while Moore had made a fairly good recovery, he continued to suffer with balance problems, short-term memory loss, and right-side weakness.

Appellant Hampton called as witnesses his mother, Patricia Sterling, his brother, Christopher Sterling, and Samuel Frazier. Each of them testified that on the day of the assault, Hampton accompanied them to Woodstock, Virginia to register Christopher, Hampton and Sterling's brother, at the Massanutten Military Academy.[4] Christopher and Hampton rode with friends in a separate car, while Patricia Sterling and Frazier drove in another car. All testified that they left the District between 4:00 and 5:00 p.m. However, each witness was impeached with

---

motion by Sterling was granted by order entered *November 20, 1995.*

**3.** Bowman testified that he had known Hampton for nearly twenty-one years.

**4.** Patricia Sterling is the mother of both Sterling and Hampton. Christopher is their younger brother. Samuel Frazier is Christopher Sterling's father, but is unrelated to Sterling and Hampton.

grand jury testimony in which they testified about different times of departure.[5]

Horton Morrison, the front desk clerk at the Ramada Inn in Woodstock, Virginia at the time of their arrival, testified that Frazier had registered for three rooms. Hotel documents reflected a check-in time of 7:08 p.m. However, Morrison testified he could not testify as to the accuracy of the time because the date-stamp machine was malfunctioning.

Appellant Sterling called one witness, his brother Shawn Taylor. Taylor testified that he heard a crash and saw that Hampton's car had been hit and informed Sterling. Taylor further testified that Sterling and Moore exchanged words, and then Sterling punched Moore. Taylor indicated that Epps, Sterling and "Rolando" started kicking Moore, but Sterling kicked him only once. Taylor also testified that Epps kicked Moore in the head, but Sterling told him to stop, saying "Don't kill the man, that's enough." Taylor also testified that Epps, Sterling and Rolando "bashed in" Moore's car.

## II. *Claims of Evidentiary Insufficiency*

■ Hampton and Epps argue that the trial court erred in denying their motion for judgment of acquittal because there was insufficient evidence to convict. "In evaluating a claim of evidentiary insufficiency, we must view the evidence in a light most favorable to the government, recognizing the jury's province to weigh the evidence, determine the credibility of witnesses, and make justifiable inferences from the evidence." *Peterson v. United States*, 657 A.2d 756, 760 (D.C.1995) (citations omitted). " '[T]he government is not required to negate every possible inference of innocence.' " *Id.* (quoting *Jones v. United States*, 625 A.2d 281, 288 (D.C.1993)). Reversal will be warranted " 'only if there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt.' " *Id.* (quoting *In re R.H.M.*, 630

A.2d 705, 707 (D.C.1993)). Against that standard, we conclude that the evidence was sufficient to support the convictions except for the malicious destruction of property (felony) count.

■ Annie Towns and James Leary observed the assault close up and positively identified Hampton as one of the assailants. Douglas and Dominic Bowman and Leary all testified that Epps was a member of the group that assaulted Moore. Because all of these witnesses expressed certainty with regard to the assailants, and had the opportunity to observe the assault at close range, their identification of Hampton and Epps are sufficient to support the verdict.

Hampton concedes that there were two witnesses who identified him as one of Moore's attackers. However, he contends that the evidence as a whole compelled the jury to have a reasonable doubt. He points to his evidence of alibi and matters affecting the credibility of the government's witnesses. Epps contends that his identification was based upon insufficient or unreliable evidence. He points out that some of the government's witnesses did not identify him as one of the assailants. Although he had known him for many years, Epps challenges the identification made by Douglas Bowman because of his location to the incident and because he had been drinking beer throughout the afternoon. Likewise, he contends that Dominic Bowman, who said he had known him for three or four months, had a couple of beers and admitted to smoking marijuana before the incident. He also faults Leary's identification because Leary did not come forward until one year after the assault and did not pick his photograph from a photo array. Epps also points to a lack of evidence of motive for him to commit the offenses.

■ It is the jury's province to resolve questions of credibility and to make reason-

---

5. Christopher told the grand jury they had left Washington at noon. Frazier said they left at either 6:00 or 8:00 p.m. Patricia Sterling told the grand jury that they arrived in Virginia when it was getting dark, but at trial she testified that when they arrived in Virginia it was still daylight. Frazier also told the grand jury that the trip to Virginia took four hours, but at trial he testified that it only took two hours. Annie Towns, who had known Patricia Sterling since childhood, testified that she saw her and Frazier in an alley near the scene of the accident after the assault between 7:00 or 8:00 p.m.

**132**

able inferences from the evidence. *Beatty v. United States,* 544 A.2d 699, 701 (D.C.1988). Reversal is warranted only if " 'there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt.' " *In re R.H.M., supra,* 630 A.2d at 707 (quoting *Raymond v. United States,* 396 A.2d 975, 978 (D.C.1979)). Both Epps and Hampton essentially challenge the jury's credibility determinations. However, there was evidence from which "a reasonable juror could find the circumstances surrounding the identifications convincing beyond a reasonable doubt." *See Hill v. United States,* 541 A.2d 1285, 1287 (D.C.1988); *Crawley v. United States,* 320 A.2d 309, 311 (D.C.1974). Therefore, we find no basis for reversal on the ground of insufficiency of the identification evidence.

▮ Appellants argue that the trial court erred in denying their motions for judgment of acquittal on the malicious destruction of property count because no evidence was offered to prove that the damages to the property exceeded $200. *See* D.C.Code § 22–403. The government concedes this point, but it contends that the convictions for felony destruction of property should be vacated and convictions for the misdemeanor offense entered. The misdemeanor offense requires proof that the property destroyed has a "useful, functional purpose." *Shelton v. United States,* 505 A.2d 767, 768 n. 2 (D.C.1986) (citations omitted); *see also Zellers v. United States,* 682 A.2d 1118, 1120–22 (D.C.1996). There was sufficient evidence from which the jury could infer that the vehicle served a useful purpose which appellants destroyed. There was evidence that Moore had driven the vehicle after hitting Hampton's car and that appellants crashed the window and destroyed the headlights and that the car had to be towed away. This evidence was sufficient to support convictions for misdemeanor malicious destruction of property. Therefore, the case should be remanded to the trial court with instructions to enter judgments of conviction for the misdemeanor offense and resentence accordingly. *See Wilson v. United States,* 358 A.2d 324 (D.C.1976) (evidence of value insufficient for grand jury conviction and

case remanded for entry of judgment of conviction for petit larceny).

### III. *Impeachment Evidence*

Appellants Hampton and Sterling argue that the trial court erred in allowing the government to impeach its own witness, Dominic Bowman, with prior inconsistent statements and in failing to provide an immediate cautionary instruction that the evidence was to be considered for impeachment purposes only. Bowman initially testified at trial that he could not recall anything about the assault, and the government asked to treat Bowman as a hostile witness and impeach him with his grand jury testimony. At a bench conference, the prosecutor claimed surprise that Bowman had no recollection at all of the event. The prosecutor stated that Bowman had said the week before only that he "was going to take James [Hampton] out." Over defense objection, the court granted the government's request. As the reasons for its ruling, the court stated:

> This has all of the indicia, as far as I'm concerned, as complete surprise.... This is a circumstance in which the witness gave a complete story in the Grand Jury and now is saying "I can't remember anything." I think the Government is entitled to be surprised by that one and I'll permit other objections—I'll permit the Government to call this witness as a hostile witness.

The government impeached Bowman with the portions of his grand jury testimony that indicated his recollection of the assault. Bowman testified before the grand jury that he saw Sterling, Hampton and Epps assault Moore. When confronted with his grand jury testimony at trial, he adopted all of his testimony, except that he denied that Hampton was present or participated in the assault. Instead, he testified that Sterling, Epps and someone named "Lando" assaulted Moore.

▮ "A party may impeach its own witness with prior inconsistent statements if a good faith claim of surprise is made and if affirmative damage to its case results from

the testimony."[6] *Byers v. United States,* 649 A.2d 279, 283 (D.C.1994) (citations omitted); *Waldron v. United States,* 613 A.2d 370, 372 (D.C.1992). "The trial court is vested with broad discretion in determining the propriety of impeachment under D.C.Code § 14–102, and unless the ruling has no rational basis, its finding of surprise will not be disturbed." *Byers,* 649 A.2d at 283–84. (citations omitted).

■ In this case, Dominic Bowman adopted his grand jury testimony concerning appellant Sterling's participation in the crime. Therefore, even assuming that the standard for the impeachment was not met, reversal is not warranted where the witness adopts his former testimony. *Byers, supra,* 649 A.2d at 284 (citing *Jones v. United States,* 579 A.2d 250, 253 (D.C.1990); *Stewart v. United States,* 490 A.2d 619, 625 (D.C. 1985)). Since Bowman adopted the substance of his prior grand jury testimony, it was before the jury for all purposes; therefore, no limiting instruction was required. *See Stewart,* 490 A.2d at 625; *Watts v. United States,* 362 A.2d 706, 711–12 (D.C.1976).

■ The trial court held correctly that "[t]his has all the indicia ... as complete surprise ... because it is a circumstance in which the witness gave a complete story in the Grand Jury and now is saying 'I can't remember anything.'" However, appellant Hampton argues that the government could not demonstrate surprise as to Bowman's testimony concerning his involvement in the offense because Bowman had told the prosecutor the week before trial that he would exculpate Hampton. Knowledge that a witness may change his story does not preclude a claim of surprise. *See Parker v. United States,* 363 A.2d 975, 977 (D.C.1976). When a witness' prior inconsistent statement is made under oath, it is reasonable to expect

that he will repeat the testimony under oath at trial, in spite of an unsworn, informal statement of disclaimer. *See id.; see also Byers, supra,* 649 A.2d at 286. Although the trial court made no finding on whether Bowman's testimony would affirmatively damage the government's case, the record shows a rational basis for such a determination. Bowman's testimony at trial provided an unanticipated alibi and contradicted directly the testimony of two other government witnesses, Towns and Leary, who had identified Hampton as one of Moore's attackers. This court has held that when an "unexpected alibi[ ][is] presented through a government witness[ ]" the government's case is affirmatively damaged. *Byers,* 649 A.2d at 286; *see also Marshall v. United States,* 623 A.2d 551, 554 (D.C.1992).

■ Hampton, like Sterling, argues for reversal because the trial court did not give an immediate cautionary instruction on the limited use of the impeachment evidence. "[A] cautionary instruction 'is required when a party, surprised by its own witness, impeaches the witness with a prior inconsistent statement....'" *Byers, supra,* 649 A.2d at 285 (quoting *Johnson v. United States,* 387 A.2d 1084, 1087 n. 5 (D.C.1978) (en banc)). However, the failure to give the instruction at the time of the impeachment does not require automatic reversal. *Id.* (citing *Lucas v. United States,* 436 A.2d 1282, 1284 (D.C. 1981)). "We review the record to ascertain whether the omission created a substantial likelihood of prejudice to appellant." *Id.* (citation omitted). Here, the trial court gave a limiting instruction in its final charge to the jury. When the trial court instructs the jury on the limited purpose for which prior inconsistent statements were admitted in its final charge, "any prejudice resulting from the trial court's failure to give such an instruction earlier was obviated sufficiently to en-

6. At the time of trial, former D.C.Code § 14–102 was in effect. It read as follows:

When the court is satisfied that the party producing a witness has been taken by surprise by the testimony of the witness, it may allow the party to prove, for the purpose only of affecting the credibility of the witness, that the witness has made to the party or to his attorney statements substantially variant from his sworn testimony about material facts in the case. Be-

fore such proof is given, the circumstances of the supposed statement sufficient to designate the particular occasion must be mentioned to the witness, and he must be asked whether or not he made the statements and if so allowed to explain them.

This law has been amended and the new law became effective in May 1995. *See* D.C.Code § 14–102 (1995 Repl.).

sure that appellant received a fair trial." *Johnson v. United States,* 387 A.2d 1084, 1089 (D.C.1978). In this case, the court instructed the jury at the conclusion of the trial that prior inconsistent statements were admitted for the sole purpose of evaluating credibility and could not be considered to establish the truth of any facts in the statement. Reversal is not warranted under the plain error standard.[7] *Stewart, supra,* 490 A.2d at 625 ("Under the plain error standard, the assigned error must be so clearly prejudicial to the appellant's substantial rights as to jeopardize the very fairness and integrity of the trial."); *see also Gordon v. United States,* 466 A.2d 1226, 1232 n. 2 (D.C.1983).

## IV. *The Brady Claim*

Prior to appellants' sentencings, the government notified appellants that Dominic Bowman, who testified as a government witness, had been indicted for distribution of heroin at the time he testified at trial. Bowman had been arrested on March 9, 1993, and he testified on April 20, 1993. The letter noted that the defense attorneys knew that Bowman was going to be a government witness and that information regarding the pending case was public information and available through the court computer. Each of the appellants filed a motion for a new trial because of the disclosure. Sterling argued that this previously undisclosed information was material to the issues at trial and that a new trial would result in acquittal. Epps contended that he could have asserted that Bowman was currying favor with the government and thereby prove bias. Hampton asserted that if the information had been presented to the jury, it would have bolstered the credibility of the witness who had exculpated him. The government argued that a new trial was not warranted because there was no reasonable probability that the result of the proceeding would have been different if Bowman's pending charge had been disclosed. It was the government's position that Bowman's reluctance to testify demonstrated that he "tried to avoid helping the government at every turn." The government also pointed out that Bowman's testi-

mony concerning Epps and Sterling was consistent with his grand jury testimony, which was given before his arrest. As to Hampton, the government argued that the result of the proceeding would not have changed because his alibi witnesses had been impeached substantially with their grand jury testimony, and another witness, Towns, contradicted Hampton's alibi evidence.

The trial court denied the motion for a new trial, concluding that there was no reasonable probability that the result of the proceeding would have been different if the pending charge had been disclosed in time for use at trial. The court reasoned that it appeared from the record that Bowman clearly was not currying favor with the government and that his testimony assisted the government's case only in a small way. The court also observed that Bowman's grand jury testimony was given prior to his arrest and that his trial testimony concerning Sterling and Epps was consistent with his grand jury testimony. Appellants argue that the trial court erred in denying their motions.

■■■■■ The government's failure to disclose material evidence favorable to the accused results in a deprivation of due process. *Edelen v. United States,* 627 A.2d 968, 970 (D.C.1993) (citations omitted). Therefore, the prosecution must disclose such material in time for the defense to use the "favorable material effectively in the preparation and presentation of its case, even if satisfaction of this criterion requires pretrial disclosure." *Id.* However, when *Brady* information has not been disclosed timely, reversal is warranted only if "there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Id.* at 971. Where, as here, the trial court has determined that asserted *Brady* material would not have materially affected the verdict, our review is "limited to a determination of whether that decision was reasonable." *Davies v. United States,* 476 A.2d 658, 661 (D.C.1984) (citing *United States v. Agurs,* 427 U.S. 97, 114, 96 S.Ct. 2392, 2402, 49 L.Ed.2d 342 (1976)). An independent review is inappropriate. *Id.*

---

7. Appellants did not request a cautionary instruc- tion.

▆ In this case, the trial court determined that, viewing the pending charge in the context of the evidence as a whole, "there is no reasonable probability that the outcome of the trial would have been different with respect to any defendant." In light of Dominic Bowman's departure at trial from his grand jury testimony which caused the government to impeach him, as the trial court observed, "Bowman very clearly was not currying anything with the government during the trial." Therefore, any utility of using his pending charge to show pro-government bias, at best, would have been limited. Even after presentation and partial adoption of his grand jury testimony, Bowman's testimony barely assisted the government, as the trial court observed. Therefore, we find no error in the trial court's conclusion that Bowman's account did not contribute materially to the other eyewitnesses' accounts and that the limited value of Bowman's testimony could not have altered the trial result with any reasonable probability. The trial court's ruling was not unreasonable; therefore, we will not disturb it. *Edelen, supra,* 627 A.2d at 972.

## V. *Severance*

On July 8, 1992, Hampton filed a motion to sever his trial from his codefendants claiming that if the trials were severed, he would call Sterling as a witness, and Sterling would exculpate him by testifying that Hampton was not present at the time of the assault. The government opposed the motion, arguing that Hampton had not made the necessary showing for severance. Defense counsel responded to the government's opposition, stating that a final decision regarding whether Sterling would be willing to testify at a separate trial had not yet been made. He also argued that Sterling's proposed testimony was not cumulative despite the availability of other witnesses who would testify regarding his alibi defense. The trial court denied Hampton's motion because it was not certain that Sterling would actually testify on Hampton's behalf. The court also added that there were several other witnesses who could testify that Hampton was not present during the assault and that the interest of judicial economy weighed against severance.

▆ There is a longstanding presumption that favors trying appellants jointly when they are charged with jointly committing a criminal offense. *Payne v. United States,* 516 A.2d 484, 489 (D.C.1986) (citing *Robinson v. United States,* 452 A.2d 354, 358 (D.C.1982)). We will reverse the trial court's decision denying a motion for severance only upon a clear showing that it has abused its considerable discretion. *Id.* To demonstrate an abuse of discretion, a defendant must show not simply prejudice, but that "they suffered 'manifest prejudice' from the joinder of their cases." *Id.* To warrant severance on the basis of the need for exculpatory testimony from a co-defendant, a defendant must show that "the exculpatory nature of the desired testimony, the desire of the movant to present [the co-defendant's] testimony, the willingness of the co-defendant to testify, and the demands of judicial administration." *Lumpkin v. United States,* 586 A.2d 701, 707 (D.C.), *cert. denied, Austin v. United States,* 502 U.S. 849, 112 S.Ct. 151, 116 L.Ed.2d 116 (1991) (quoting *Jackson v. United States,* 329 A.2d 782, 788 (D.C.1974), *cert. denied,* 423 U.S. 851, 96 S.Ct. 95, 46 L.Ed.2d 74 (1975)).

▆ We find no abuse of discretion in the trial court's ruling because Hampton failed to meet the criteria for severance. It was uncertain whether Sterling would testify in his behalf. Defense counsel indicated that a final decision regarding whether Sterling would testify had not been made. Furthermore, Sterling's testimony, that Hampton was not at the scene of the assault, was available from several other sources. Patricia Sterling, Samuel Frazier, and Christopher Sterling testified that Hampton was in Virginia at the time of the assault. Hampton could not overcome the strong presumption favoring a joint trial for defendants jointly charged with committing criminal offenses. Therefore, we find no error in the trial court's ruling.

▆ For the foregoing reasons, the judgments of conviction appealed from hereby are affirmed except for the convictions of malicious destruction of property (felony) and

ADW.[8] Appellants' conviction for these offenses are reversed, and the case is remanded to the trial court with instructions to vacate the ADW convictions and the felony property offense and enter judgments of conviction for misdemeanor destruction of property, and to resentence appellants accordingly.

*So ordered.*

### In re M.M.S., Appellant.

### No. 96–FS–144.

District of Columbia Court of Appeals.

Argued Feb. 6, 1997.

Decided March 27, 1997.

Judith A. Lovelace, Washington, DC, appointed by the court, for appellant.

Rosalyn Calbert Groce, Director, Policy and Appeals Branch, Office of the Corporation Counsel, with whom Charles F.C. Ruff, Corporation Counsel, Robert R. Rigsby, Deputy Corporation Counsel, and Sidney R. Bixler, Assistant Corporation Counsel, were on the brief, for appellee District of Columbia.

Before FERREN, TERRY, and STEADMAN, Associate Judges.

---

8. All three appellants argue that their convictions on mayhem while armed and assault with a dangerous weapon merge into one offense. A defendant cannot stand convicted of both a lesser included and a greater included offense. *See Doepel v. United States*, 434 A.2d 449, 459 (D.C.), *cert. denied*, 454 U.S. 1037, 102 S.Ct. 580, 70

L.Ed.2d 483 (1981). Here, the government does not contest the claim of merger of these offenses or the vacation of the convictions of ADW for all three appellants; therefore, we remand for vacation of the ADW convictions. *Hayward v. United States*, 612 A.2d 224, 226 n. 1 (D.C.1992).