William M. **BROWN**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 21431.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 26, 1968.

Decided May 1, 1969.

Mr. James Mitchell Jones, Washington, D. C. (appointed by this court) for appellant.

Mr. David A. Clarke, Jr., Special Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the brief, for appellee.

Before FAHY, Senior Circuit Judge, and McGOWAN and TAMM, Circuit Judges.

PER CURIAM:

■■ This appeal from a conviction of manslaughter raises three issues. Two of them we find unavailing,[1] but we are not prepared to dispose of the third without supplementation of the record.

This third issue arises out of the permission given by the court to the prosecution to impeach its own witness. 14 D.C. Code § 102 (1967), *and see* Bartley v. United States, 115 U.S.App.D.C. 316, 319 F.2d 717 (1963). This witness, Spriggs, was a principal participant in the encounter which resulted in the death of Stokes, and his testimony, as the only eyewitness, was a critical part of the Government's evidence. After he had begun testifying, the prosecutor claimed surprise and was given leave, over an objec-

---

1. Indicted for second degree murder, appellant objected to the Government's request at the close of all the evidence for an instruction on the lesser included offense of manslaughter on the theory that one view of the testimony raised the issue of whether excessive force was used by appellant in defending himself. Appellant's objection was articulated, however, solely in terms of there being no evidence relevant to manslaughter. We think that the Government's case, unaided by the impeaching matter hereinafter discussed, was adequate to support the submission to the jury of the manslaughter alternative.

Appellant's second claim is that the medical testimony did not adequately support the relationship found by the jury between appellant's acts and the death of the victim. The matter is not free from doubt, but we think, after reviewing the record, that the evidence as to causation was sufficient to admit of the jury's determination.

tion by the defense but one which did not expressly challenge the claim of surprise, to impeach its witness by reference to a statement given by him to the police the day after the encounter resulting in Stokes' death occurred.

After the trial was over, appellant moved for a new trial on the ground of newly-discovered evidence. This was accompanied by an affidavit of his counsel, alleging various conversations with the prosecutor both before and after the trial which, so it is said, establish that the prosecutor knew that Spriggs was going to testify at variance with his initial statement, and that he explicitly admitted as much after the trial was over.[2] In his opposition to the motion, the prosecutor does not address himself directly to the allegations of the affidavit, but gives an account of his inquiries to Spriggs prior to trial. These are concededly somewhat limited in character,[3] and the prosecutor explains this as follows:

> The reason further interrogation was not made of the events of the actual killing was because it was apparent that he might turn out to be a hostile

witness during the course of the trial and if that contingency arose, the Government wished to be in a position to legitimately claim "surprise" within the meaning of the statute and Wheeler v. United States, 93 U.S.App.D.C. 159, 211 F.2d 19 (1953).

To the extent that this suggests the Government may avoid its own witnesses before trial in order to be able to claim surprise and thereby to get before the jury the witness's repudiated version of the facts, serious questions are raised. *See* Hooks v. United States, 375 F.2d 212 (5th Cir. 1967). The "surprise" referred to by Congress in the statute governing this matter is presumably founded upon good faith.

We have before us, of course, only the untested assertions of an affidavit and a pleading, and it may be that, upon inquiry, a different picture will emerge. But we think the question important enough not to be left in this posture,[4] and we, accordingly, remand the record for supplementation by findings and conclusions to be made by the District Court after an evidentiary hearing

---

2. The affidavit describes the alleged post-trial conversation in these terms:

    The following day, July 27, 1967, at about 3:30 P.M., after having considered all the ramifications of the impeachment of the witness, your affiant called [the prosecutor] and asked him if he had actually been surprised by the direct testimony of the witness Spriggs. [The prosecutor] stated that he was not actually surprised, that it was an "institutional surprise," that he had never interviewed the witness and that he had never read his statement to him to confirm whether or not it was true because he was afraid the testimony of the witness might change and he said "I didn't want him to spin me."

    The pre-trial conversations alleged in the affidavit tend to raise some question, however, as to why defense counsel did not object to the claim of surprise when it was made at trial.

3. They show some effort on two occasions to inquire of Spriggs about his statement to the police, but, in respect of the first such inquiry, the prosecutor says that "[A]t that time, the witness was not questioned about the facts of the case or

about the details of a written statement he had given to the police shortly after the shooting." As to the second of such conversations, which occurred on the morning of the trial, the prosecutor says only that Spriggs said he had told appellant that "Man, I gave a statement to the police and I can't change it now." This was immediately followed by this statement of the prosecutor:

    At no time prior to trial did Spriggs read his statement nor did I go over with him the critical facts of the case concerning the actual killing. I did, however, test him on an initial part of the statement by asking him what the decedent had said about "numbers" and Spriggs' response to this question was the same as in his written statement.

4. After oral argument before us, we obtained, with the prior consent of counsel for both sides, the grand jury minutes containing Spriggs' testimony before that body for the purpose of comparing that testimony with what he said at trial, and with the Government's characterization of his statement to the police. This comparison only fortifies our feeling that further inquiry is desirable, although we

of appellant's post-trial motion. Our appellate jurisdiction is retained pending the return of the record as so supplemented.

It is so ordered.

intimate no opinion as to whether the prosecutor at trial either knew, or is

chargeable under the circumstances with knowledge, of the grand jury version.