James R. PARKER, Jr., Appellant,

v.

UNITED STATES, Appellee.

No. 9572.

District of Columbia Court of Appeals.

Argued May 13, 1976.

Decided Sept. 30, 1976.

Mildred M. Matesich, Washington, D. C., appointed by this court, for appellant.

Alexia Morrison, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Peter K. Mair, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KELLY, GALLAGHER and NEBEKER, Associate Judges.

NEBEKER, Associate Judge:

This appeal is from a conviction after a jury trial of second-degree murder in violation of D.C.Code 1973, § 22–2403. Appellant contends that the trial court erred in (1) allowing the government to claim surprise and impeach its own witness; (2) allowing the prosecutor to cross-examine appellant's character witnesses on whether they had heard of appellant's prior arrests and convictions; and (3) refusing to call additional witnesses to explore appellant's allegations that government witnesses had been discussing the trial with a spectator. We conclude there were no errors by the trial court and affirm the conviction.

Early in the evening of June 18, 1974, an altercation took place in Northwest Washington. A woman who had just returned from court attacked with a knife a man who had testified against her. She was injured by her own knife and was taken to a nearby hospital by one David Banks. When she and Banks returned, Banks became involved in an argument with some of the people from the neighborhood who had witnessed the incident. Appellant,

who was in the back seat of a car and who had witnessed the earlier incident, emerged from the car with a shotgun and shot Banks, who died two days later.

Appellant contends that the prosecutor's claim of surprise, upon learning that an eyewitness' testimony at trial would probably differ from that which he had given to the grand jury was not genuine and that the trial court had improperly accepted it. After reading the record before us, we conclude that the prosecutor's claim was a legitimate one and that the court's ruling was proper.

■ Claims of surprise are governed by D.C.Code 1973, § 14–102.[1] The claim of surprise must be made in good faith. *Brown v. United States,* 134 U.S.App.D.C. 1, 411 F.2d 716 (1969). The witness here testified before the grand jury, presumably telling the truth about what he had seen of the shooting. During the time between the grand jury appearance and the trial, the witness, who was known to associate with appellant, expressed to the prosecutor his reluctance to testify against appellant at trial.

Before trial, defense counsel informed the court and the prosecutor that the witness would not support the prosecution. It is asserted that this was an effort to prevent a claim of surprise by the prosecutor. When called to testify out of the presence of the jury, the witness did change his testimony from that given before the grand jury. The witness also told the court that he had been interviewed by defense counsel prior to trial with appellant present, which had frightened him. After hearing the witness' testimony, the trial court ruled that it would allow the government to claim surprise and to examine him in accordance with D.C.Code 1973, § 14–102.

■ In *Wheeler v. United States,* 93 U.S.App.D.C. 159, 211 F.2d 19 (1953), *cert. denied,* 347 U.S. 1019, 74 S.Ct. 876, 98 L. Ed. 1140 (1954), the trial court allowed the government to claim surprise and to impeach its witness despite the prosecution's knowledge of a statement exculpating the defendant given after the witness' grand jury testimony. The standard used is that " 'the court shall be satisfied' that 'surprise' exists." *Id.* at 165, 211 F.2d at 25. Addressing the appellate process, the standard to be used is that "the trial court's ruling on 'surprise' may not be disturbed unless it plainly appears that the ruling is without any rational basis." *Id.* In view of the record before us, we cannot say there was no rational basis for the claim of surprise.[2] The witness had previously testified under oath and it must be presumed that he knew the significance of an oath. Although he reportedly may have given a different version of the event when interviewed with the accused present and engendering fear in him, that fact alone need not be deemed to preclude a valid claim of surprise.

■ It is significant that the underlying policy of D.C.Code 1973, § 14–102, has been specifically eschewed in the Federal Rules of Evidence. Under Rule 607 "[t]he credibility of a witness may be attacked by any party, including the party calling him." The Advisory Committee's Note to Rule 607 expressly abandons the notion that one may not impeach his own witness. The Note also states, "If the impeachment is by a prior statement, it is free from hearsay dangers and is excluded from the category

1. D.C.Code 1973, § 14–102, provides in pertinent part:
 When the court is satisfied that the party producing a witness has been taken by surprise by the testimony of the witness, it may allow the party to prove, for the purpose only of affecting the credibility of his witness, that the witness has made to the party or to his attorney statements substantially variant from his sworn testimony about material facts in the cause. . . .

2. *Brown v. United States, supra,* on which appellant places reliance, is not dispositive for, unlike this case, the prosecutor there avoided contact with a waning witness to artificially maintain his state of knowledge in aid of an anticipated surprise claim.

of hearsay under Rule 801(d)(1)." Indeed, the prior grand jury testimony of this witness is specifically excluded from the hearsay category by Rule 801(d)(1) inasmuch as he testified at trial and was subject to cross-examination, and since the prior statement was inconsistent and given under oath and subject to the penalty of perjury. Thus, were it not for the inconsistency of § 14–102 with Federal Rules of Evidence 607 and 801(d)(1)—both enactments of Congress—this court and the trial court would not have to wrestle with the problems of a surprise claim and the instruction that the impeaching testimony affects credibility only and may not be considered for its truth.

 Although not crucial to our holding on this point, one additional aspect of the problem presented warrants comment. To be sure, defense counsel was discharging his professional obligation to investigate "the circumstances of the case and explore all avenues leading to facts relevant to guilt"[3] or innocence when he interviewed the eyewitness. Indeed, counsel was wise not to interview the witness alone.[4] However, when defense counsel takes the accused along, he permits the appearance if not the fact of intimidation of the witness. This is particularly true in a case involving a violent crime or a defendant with a reputation for violence. The ABA Standards for the Defense Function (note 3, *supra*), seem pointedly to counsel against such a practice. Standard 4.3(c) admonishes against obstructing communication between prospective witnesses and the prosecutor. Of course, implicit or indirect threats, or even the appearance thereof to an apprehensive witness, are contemplated in that proscription. Moreover, Standard 4.3(d) expressly advises that witness interviews be conducted "in the presence of a third person." And though the Commentary does not speak to this specific issue, it would

seem clear that a defendant in a criminal case is not a third person for witness interview purposes. Additionally, it is difficult to see how use of the accused can safely solve the lawyer-witness problem sought to be avoided by Standard 4.3(d). The accused may not desire to testify at trial and yet be forced to do so or forego impeaching a prosecution witness. Accordingly, we admonish against the practice of having the accused present during counsel's interviews of prospective prosecution witnesses. *See United States v. Yates*, D.C.App., 279 A.2d 516, 518 (1971).

Appellant contends that the trial court erred in allowing the prosecutor to cross-examine his character witnesses regarding appellant's prior arrests for petit larceny and tampering with an automobile, and his conviction of the former offense, in light of the defense's proffer that it would question the witnesses only as to appellant's reputation for peace and good order. Appellant further asserts that this alleged error irreparably prejudiced him in that it brought his prior arrests to the jury's attention. We disagree.

 We note first that the issue was not properly preserved at trial. Defense counsel first raised the issue of the scope of cross-examination of appellant's character witnesses just before the testimony of the first of those witnesses. Counsel asked the court to rule that the government could not cross-examine the witnesses as to appellant's prior criminal record, *not* because such arrests would be beyond the scope of counsel's questions on direct examination regarding appellant's reputation for non-violence, but because the two proffered witnesses did not know appellant at the time of his prior arrests. The court ruled properly that the government's questioning would not be limited as appellant had requested. We note that the decision wheth-

3. ABA Project on Standards for Criminal Justice, The Prosecution Function and the Defense Function, Part IV, § 4.1 Duty to Investigate (Approved Draft, 1971).

4. *Id.*, Standard 4.3(d).

er to allow a particular question to be asked at trial is within the discretion of the trial court, and appellant has not shown that the exercise of that discretion was abused. *Michelson v. United States,* 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948).

> When, however, a character witness is offered, he becomes subject to cross-examination as to his testimonial qualifications. The probe on cross-examination may extend to those matters which legitimately affect the witness' knowledge of the accused's community reputation for the character trait to which he has attested. This includes prior convictions of the accused bearing on the trait entered into evidence. . . . [*Darden v. United States,* D.C.App., 342 A.2d 24, 26 (1975).]

Preserved for appellate review or not, the cross-examination was not error.

It is also contended that the trial court did not fully explore the allegation that a spectator had been discussing the testimony with witnesses outside the courtroom and that appellant was therefore denied appropriate relief from the alleged violation of the sequestration of those witnesses. We have read the record and agree with the trial judge in his denial of a mistrial. After a morning recess on the fourth day of trial, defense counsel informed the court that a spectator who had been in the courtroom throughout the trial had been leaving the courtroom after each witness had testified and that he was discussing the testimony with other witnesses. This allegedly had been observed by a defense witness. The trial judge called both the defense witness and the spectator to testify and questioned them extensively. The spectator denied having discussed the testimony with anyone outside the courtroom. The record shows that the court had before it an allegation of a single comment on a discrepancy in the testimony on a matter that was not central to any of the issues in the case, and a firm denial of any

inappropriate discussion. The judgment as to the credibility of the two witnesses was that of the trial court. *See* D.C.Code 1973, § 17–305.

Accordingly, the judgment of conviction is

*Affirmed.*