Rodney **PROPHET**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 94–CO–980.

District of Columbia Court of Appeals.

Argued Jan. 4, 1996.
Decided Feb. 19, 1998.

---

Richard Greenlee, Public Defender Service, with whom James Klein, Sandra Levick, and Gretchen Franklin, Public Defender Service, were on the brief, for appellant.

Mary Ann Snow, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney at the time the brief was filed, and John R. Fisher and Carolyn K. Kolben, Assistant United States Attorneys, were on the brief, for appellee.

Before TERRY and STEADMAN, Associate Judges, and MACK, Senior Judge.

TERRY, Associate Judge:

Appellant Prophet was convicted of armed first-degree murder (felony murder)[1] and armed robbery.[2] On appeal we affirmed his conviction on the merits, but vacated the armed robbery conviction because it merged with the felony murder conviction. *Prophet v. United States,* 602 A.2d 1087 (D.C.1992) (*"Prophet I"*). Thereafter Prophet filed in the trial court a motion for new trial based on a claim of newly discovered evidence, which the court denied without a hearing. From that denial Prophet brings this appeal. We find no abuse of discretion and accordingly affirm the trial court's order.

---

1. D.C.Code §§ 22–2401, 22–3202 (1989).

2. D.C.Code §§ 22–2901, 22–3202 (1989).

## I

On December 11, 1987, shortly before 10:00 a.m., Prophet and his co-defendant Jarrell Allen, along with Anthony Humes and Dennis Kingman, were standing near a public telephone on Martin Luther King Avenue, S.E., when Kendall Merriweather came walking down the street toward them. Merriweather was carrying a large radio of the sort commonly known as a "boom box." As Merriweather passed them, Allen asked Prophet, referring to the radio, "Do you want it?" Prophet replied, "Yeah." Allen started to follow Merriweather, and Prophet followed Allen at a distance. As Allen approached Merriweather, Prophet stopped and waited at a gas station about eighty yards away. Allen, after attempting to take the radio from Merriweather, shot him in the back with a .357 magnum revolver. As Merriweather fell, Allen took the radio and casually walked away through an alley. Prophet met Allen at the other end of the alley, and together the two of them went to the apartment of a friend, Tyrone Wells. The police found them there about five minutes later and placed them both under arrest. The arresting officers also seized the radio, which was in Wells' bedroom.[3] Later, in a statement to the police, Prophet admitted that he had seen the revolver in Allen's possession earlier on the day of the shooting.

Both Prophet and Allen were identified by several witnesses, including Anthony Humes, who had known Prophet since elementary school and was also acquainted with Allen. Humes testified at trial that he had heard Allen ask Prophet if he wanted the radio, and that Prophet had said he did and had followed Allen as Allen stalked Merriweather. Another witness, Derrick Richmond, testified that although he did not hear the actual words being spoken, he knew that Allen and Prophet were talking as Merriweather walked past them with the radio because he could see their lips moving.

## II

Prophet's only argument on this appeal is that the trial court abused its discretion when it denied his motion for new trial without a hearing. He contends that the newly discovered evidence[4] would probably have led to an acquittal, and cannot be regarded as merely impeaching or cumulative evidence. Prophet also asserts that the court mischaracterized the testimony of a single witness (Humes) about Prophet's affirmative response to Allen's question about the radio, when the court said in its order that Allen's proffered testimony "is contradicted by witnesses who will testify that the defendant told Allen he wanted the victim's stereo."

Super. Ct.Crim. R. 33 authorizes the trial court to grant a motion for new trial "if required in the interest of justice." We have said on many occasions that a ruling on such a motion is within the trial court's discretion and may not be reversed unless that discre-

---

3. Allen was carrying the radio when he and Prophet entered Wells' apartment. He handed it to Wells, who took it into the bedroom and plugged it into an electrical outlet. Prophet's fingerprint was later found on the radio.

4. This "newly discovered" evidence was an affidavit from Prophet's co-defendant, Jarrell Allen, purporting to exonerate Prophet of responsibility for the crime by assuming the entire blame himself. The affidavit said:

 1. Before I robbed and killed Kendall Merriweather, I never discussed or planned with Rodney Prophet that I would rob or harm anyone.

 2. When I was standing on Martin Luther King, Jr. Avenue and Kendall Merriweather walked by with his radio, Rodney Prophet said and did nothing which encouraged me or in any way influenced my decision to rob and shoot Mr. Merriweather.

 3. Once I started to pursue Mr. Merriweather, Rodney Prophet did nothing to help me commit the crime or to encourage me to commit the crime. Mr. Prophet did not act as a "look out" for me and there was no plan for him to do so.

 4. After the shooting, I ran into Rodney Prophet in an alley and we went to the house of Tyrone Wells where we were later arrested. None of this was planned before the shooting. There was no plan or discussion that Rodney Prophet would help me after the crime.

 5. I am saying these things because they are true. I have not been threatened or bribed. I am saying these things because I am solely responsible for this crime on which I am doing time.

 6. I am willing to come to court and testify to these matters under oath.

tion has been abused. *See, e.g., Derrington v. United States,* 488 A.2d 1314, 1339 (D.C. 1985). A special rule applies when a motion for new trial is based on a claim of newly discovered evidence:

> To obtain a new trial because of newly discovered evidence (1) the evidence must have been discovered since the trial; (2) the party seeking the new trial must show diligence in the attempt to procure the newly discovered evidence; (3) the evidence relied on must not be merely cumulative or impeaching; (4) it must be material to the issues involved; and (5) of such nature that in a new trial it would probably produce an acquittal.

*Thompson v. United States,* 88 U.S.App. D.C. 235, 236, 188 F.2d 652, 653 (1951); *accord, e.g., Smith v. United States,* 466 A.2d 429, 432–433 (D.C.1983); *Godfrey v. United States,* 454 A.2d 293, 299 n. 18 (D.C.1982); *Heard v. United States,* 245 A.2d 125, 126 (D.C.1968) (adopting the five-part *Thompson* standard). Applying this special rule, we must determine whether the record supports the conclusion reached by the trial court, namely, that the affidavit proffered by appellant was merely impeaching, and was not "so compelling" that it would probably produce an acquittal. *See Byers v. United States,* 649 A.2d 279, 288 (D.C.1994).[5]

■ A statement by a co-defendant who chose to remain silent during the earlier trial may, in some circumstances, arguably be regarded as newly discovered evidence. This type of evidence, however, warrants close scrutiny because such a co-defendant, after conviction, "has little to fear in attempting to exculpate others involved in the offense by assuming the entire blame." *Byers,* 649 A.2d at 287 (citation omitted). Thus the trial court must exercise great caution when considering such evidence as "newly discovered," when in fact it existed all along and was

unavailable only because a co-defendant, since convicted, previously availed himself of his privilege not to testify. *United States v. Jacobs,* 475 F.2d 270, 286 n. 33 (2d Cir.), *cert. denied,* 414 U.S. 821, 94 S.Ct. 116, 131, 38 L.Ed.2d 53 (1973). Each case, moreover, must be judged on its own particular facts. *Byers,* 649 A.2d at 287.

■ One of the grounds for the trial court's denial of appellant's new trial motion was that, "[a]s applied to this case, Allen's testimony would only contradict the testimony of Anthony Humes, thus making it no more than impeaching evidence." Impeaching evidence is evidence that is relevant only because it undermines or casts doubt on the credibility of a witness. *See, e.g., Thompson, supra,* 88 U.S.App. D.C. at 236, 188 F.2d at 653 (affirming denial of motion for new trial on the ground that newly discovered evidence of witness' prior convictions would merely impeach his credibility). But in this case, as the government concedes in its brief, "Allen's affidavit proffered substantive evidence and did not merely attack the general credibility of Humes." Thus we conclude that the trial court erred in holding that the affidavit was insufficient to justify a new trial because it was "no more than impeaching evidence."

■ The court also concluded, however, that Allen's testimony would probably not produce an acquittal because, among other things, (1) the jury knew that Allen was the actual killer, (2) he now would have nothing to lose by testifying for Prophet, (3) he had exercised his Fifth Amendment privilege and had not presented the proffered exculpatory testimony at his own trial,[6] (4) Prophet had told Allen that he wanted Merriweather's radio, and (5) Prophet's fingerprint was found on the radio. Weighing these factors, the court found it "inconceivable that Allen's

---

**5.** The court found it unnecessary to consider the first, second, and fourth prongs of the *Thompson* test, since it ruled that the affidavit did not meet the third and fifth prongs.

**6.** Appellant argues that Allen's failure to testify at his previous trial would not be admissible at a new trial. The government maintains that it would, citing *Jenkins v. Anderson,* 447 U.S. 231, 235–238, 100 S.Ct. 2124, 2127–2129, 65 L.Ed.2d

86 (1980), and *Raffel v. United States,* 271 U.S. 494, 496–499, 46 S.Ct. 566, 567–568, 70 L.Ed. 1054 (1926). We need not decide this point because, regardless of whether Allen could or could not be impeached with his prior silence, we are satisfied that the record as a whole supports the trial court's conclusion that a new trial would not lead to an acquittal.

testimony would lead to an acquittal after a new trial." In light of all the evidence and the relevant case law, we cannot find any abuse of discretion in that ruling.[7]

■ Prophet argues nevertheless that the court should at least have held a hearing before denying his motion. Rule 33 authorizes the court, in considering a motion for new trial, to "take additional testimony" if the case was tried without a jury. Beyond that, however, the rule says nothing about a hearing, and we have held that a trial court is not required to hold a hearing before ruling on such a motion. *Geddie v. United States,* 663 A.2d 531, 534 (D.C.1995). We have upheld the denial of a Rule 33 motion without a hearing when the trial court, after examining the proffered affidavit of a witness, concluded that the material contained in the affidavit would not "in all likelihood" result in an acquittal. *Poteat v. United States,* 363 A.2d 295, 297 (D.C.1976). We see no material difference between *Poteat* and this case. *See also, e.g., United States v. MMR Corp.,* 954 F.2d 1040, 1046 (5th Cir.1992); *United States v. Taglia,* 922 F.2d 413, 419 (7th Cir.1991); *United States v. Provost,* 921 F.2d 163, 164–165 (8th Cir.1990). In *Geddie, supra,* because the trial court had "summarily" denied a Rule 33 motion and thus had "fail[ed] to exercise its discretion properly," we ordered a remand to enable the court to take a second look at the motion. 663 A.2d at 535. Even then, however, we did not require a hearing; instead, we "remand[ed] the case for further consideration, the exact nature of which we [left] to the court's discretion...." *Id.* The instant case is different. Here the trial court not only gave careful consideration to the motion but explained in detail the reasons for its ruling. On this record we find no abuse of discretion in the court's failure to hold a hearing.

Our dissenting colleague, citing *Newman v. United States,* 705 A.2d 246 (D.C.1997), suggests that a hearing was required because Allen's credibility was "the determinative issue," and the trial court could not determine Allen's credibility without a hearing. *Post* at 781. The defendant in *Newman* asserted in a post-trial motion under D.C.Code § 23–110 (1996) that his trial counsel had been ineffective for failing to present an alibi witness (Henson) whose testimony, if believed, would have conclusively established Newman's innocence. The trial court denied the motion without a hearing, but we reversed, saying in essence that when credibility is crucial to the disposition of the motion, the trial court cannot determine credibility without holding a hearing to assess that very issue. The instant case is different for several reasons. First of all, Allen's proffered testimony is not conclusive, in that it does not actually contradict the testimony of Anthony Humes that Prophet told Allen he wanted the radio. See note 7, *supra.* Furthermore, it was not essential to Prophet's guilt that Allen *subjectively* may have been encouraged to commit the crime by what Prophet said. Prophet did considerably more to associate himself with the crime than simply saying a few words to Allen—*e.g.,* by acting as a lookout. *See Prophet I, supra,* 602 A.2d at 1092–1093 & n. 9; *see also United States v. Lumpkin,* 145 U.S.App. D.C. 162, 448 F.2d 1085 (1971) (affirming conviction of lookout as aider and abettor). Also, unlike the situation in *Newman,* where the government presented nothing to impeach the credibility of Henson's proposed testimony, in this case there were several factors—specifically cited by the trial court in its order—which would impeach Allen's credibility.[8]

Prophet makes an ancillary argument that the trial court, in stating that Allen's proffered testimony "is contradicted by witnesses

---

7. We note, in particular, that Allen's affidavit does not really contradict Humes' testimony that Prophet said he wanted the radio. It seems very carefully worded simply to say that Prophet never said anything "which encouraged me or in any way influenced my decision." We think this failure to deny explicitly that Prophet said what Humes quoted him as saying further weakens the likelihood of an acquittal after a new trial.

8. In *Newman* we noted that the government had proffered nothing that might obviate a hearing, but had relied simply on the argument that Henson's testimony, however credible, could not overcome the weight of the government's case. Implicit in our rejection of that argument, 705 A.2d at 262 n. 15, is the notion that in a case (such as this one) in which there was considerable evidence to impeach the proffered testimony of an affiant, a hearing might not be necessary.

who will testify that the defendant told Allen he wanted the victim's stereo," erred because in fact there was only one witness (Humes)—not "witnesses"—who testified about the conversation between Allen and Prophet before the shooting. We find nothing in this statement that would warrant reversal. It is entirely possible that the court was here referring to the testimony of both Humes and Richmond, who in large part corroborated each other, although only Humes recounted what Allen and Prophet actually said to one another. Even assuming that the court misspoke, its denial of Prophet's motion is set forth in a six-page order which is well reasoned and reflects a clear understanding of both the law and the facts. The reference to "witnesses" rather than a single "witness" is too inconsequential, read in context, to serve as a basis for reversal.

The order denying Prophet's motion for new trial is therefore

*Affirmed.*

MACK, Senior Judge, dissenting:

This case certainly demonstrates "[M]an's ability to complicate simplicity."[1] The sole issue here is whether the trial court erred in denying, without a hearing, appellant's motion for a new trial which attacked his conviction as an "aider and abettor" of murder. The trial court justified its holding (that a sworn affidavit of a since-convicted killer (one Allen) did not justify a new trial for the "aider and abettor") since it (1) supplied only impeaching evidence, and (2) would not likely have produced an acquittal.

On this appeal, I agree with Judge Terry that the statement made by the convicted killer was "newly discovered evidence," and that the trial court erred in holding that the affidavit was merely "impeaching evidence" (and therefore insufficient to justify a new trial). That leaves us with a still more limited issue, *i.e.*, whether the trial court could accurately predict the outcome of a new jury trial. Therefore, since I likewise agree with Judge Terry that each case must be judged on its own particular facts (citing *Byers v.*

*United States*, 649 A.2d 279, 287 (D.C.1994)), I would turn to the facts reviewed at length by this court in appellant's direct appeal. *Prophet v. United States*, 602 A.2d 1087 (D.C.1992) (*Prophet I*). Those facts, measured by the opinion's carefully defined law of the theory of "aiding and abetting," lead me to believe that the trial court could hardly prophesy the outcome of this case if this "newly discovered evidence" was found to be credible enough to go before a new jury.

In *Prophet I*, we summed up broadly—yet succinctly—the horrendous consequences that may be at risk when one is found to be on the scene when a crime (this one murder) is committed. In order to be convicted of that murder, we said, an accused must in some way associate himself with the venture, must participate in it as if wishing to bring it about, and must seek by his action to make it succeed. *Id.* at 1092. In so holding, we were following the reasoning of countless cases that have described an aider and abettor as one who "assists," "participates," "encourages," "facilitates," and "stimulates others," with guilty knowledge, in the commission of the crime. *See generally* D.C.Code Index 22 (1997 Repl.). Mere presence at the scene of a crime, even when coupled with guilty knowledge, is not sufficient to constitute aiding and abetting. *See United States v. Lumpkin*, 145 U.S.App. D.C. 162, 448 F.2d 1085 (1971).

There must be presence plus conduct on the part of the aider and abettor. *Id.* at 167, 448 F.2d at 1090. The question of sufficiency is one for the jury. *Ellis v. United States*, 395 A.2d 404 (D.C.1978), *cert. denied*, 442 U.S. 913, 99 S.Ct. 2830, 61 L.Ed.2d 280 (1979).

In affirming this conviction in *Prophet I*, perhaps the pivotal factor was whether appellant gave an affirmative response when asked by the killer (one Allen) if he wanted the "boom box" of the deceased, as testified to at trial by another young man (one Humes) on the street scene. Despite the fact that a police officer, called by the defense, testified that Humes, when questioned, said nothing about appellant wanting the ra-

---

1. Thor Heyerdahl, quoted in WEBSTER'S NEW WORLD DICTIONARY OF QUOTABLE DEFINITIONS by Eugene E. Brussell (2d ed.1988), as an example of "Progress," at 457.

dio, the trial court, over strenuous objection by the defense, allowed the government to rehabilitate Humes.[2]

Against this backdrop, the affidavit of Allen, which my colleagues concede constitutes newly discovered evidence, repudiates the trial testimony of Humes that appellant answered, "Yeah" to any inquiry about wanting the victim's "boom box." It avers that the affiant was alone when he shot the victim, and that in no way did Rodney Prophet encourage or influence the action of the affiant. While this affidavit, under the circumstances, apparently triggered some skepticism on the part of the experienced trial court, credibility is the determinative issue, and a trial court cannot determine credibility (of an affiant he has not heard) without a hearing to assess this issue. *See Newman v. United States,* 705 A.2d 246 (D.C.1997).

Here the trial court ruled that it "is inconceivable that Allen's testimony would lead to an acquittal (of Prophet) after a new trial." This is little more than a guess—an admittedly "educated guess"—but one based upon considerations not germane to the factual context of this case.[3]

A wise man once said that "Time" is "what we want most, but what we use worst." [4] In failing to conduct a short hearing, the trial judge was not saving time. Likewise, in affirming the trial court's denial (without a hearing) of a motion for a new trial, we are balancing time at the expense of more important considerations. I would remand for a hearing.

---

2. As to the allegation that appellant acted as a lookout for the killer—stricken—(but a factor *from which the jury was permitted to* draw an inference from testimony that appellant met with Allen after the murder) I note that the evidence showed that appellant was standing with others some 264 feet from the shooting site.

3. Counsel for appellant, citing case law and rules of evidence, has forcefully advanced the difficulties which the prosecution would face in attempting to impeach the affiant at any subsequent trial under the circumstances of this case.

4. William Penn, quoted in WEBSTER'S NEW WORLD DICTIONARY OF QUOTABLE DEFINITIONS, *supra* note 1, at 570.