Ruiz, Senior Judge,
dissenting:
Appellant appeals his conviction, after a bench trial, of possession with intent to distribute MDMC.[1] I would remand the case to the Superior Court for further consideration of appellant’s motion for a new trial on that charge, pursuant to the interest of justice standard, and for clarification of the trial court’s reasoning.
Further consideration and clarification are necessary for two reasons. First, in denying the motion for new trial, the trial court might have relied, unduly, on a factor—that the evidence presented with the motion represented a “change in tactics” and was “too late”—that is not supported by the record. Second, further clarification is necessary to reconcile the court’s guilty verdict with its reasoning for denying the motion based on the evidence presented at trial and with the motion. The trial court may well need to hold a hearing to properly assess the expert evidence presented with appellant’s motion.
The trial and motion for new trial. During trial, a government witness gave testimony that defense counsel thought was patently incorrect, ■ and in closing alerted the trial court, stating that he “would go to the grave” on this point, and noting that if appellant was found guilty of possession with intent to distribute MDMC, he would file a posttrial motion for new trial.[2] In a *97 filing five days after the court found appellant guilty, counsel requested additional time to file the motion. The motion was duly filed by new appellate counsel within the period granted by the court, and the court proceeded to decide the motion. At no time did the government object to the granting of the extension to file the motion.
The motion was filed pursuant to Superior Court Criminal Rule 33. Quoting the Rule, appellant requested a new trial “if the interest of justice so requires”—the standard that applies to motions filed “within seven days after the verdict or finding of guilty....” Super. Ct. Crim. R. 33 (a), (b)(2). Alternatively, and again quoting Rule 33, appellant requested that because this was a bench trial, instead.of having a new, trial, the court could “vacate judgment, take additional testimony, and direct the entry of a new judgment.” Super. Ct. Crim. R. 33 (a).
When considering the Rule 33 motion, the trial court did not make express reference to the two specific requests made by appellant under Rule 33 or the standard that applies in deciding whether to grant the motion “in the interest of justice.”[3] In denying appellant’s motion, the trial court referred to the evidence submitted with the new trial motion as “a change in trial tactics” that was “both too late and insufficient.” The trial court’s reference to appellant’s motion as a “change in trial tactics” that was “too late” is unexplained and, on this record, mystifying. Counsel clearly challenged at trial the government’s evidence that appellant possessed MDMC with the intent to distribute. The government’s case that appellant had the intent to distribute MDMC was based on texts found on appellant’s cellphone and the quantity of MDMC found in appellant’s home. Trial counsel immediately disputed the testimony of the government’s witness that the “molly” referred to in the texts was a street name for MDMC, but was instead a reference to MDMA, a different drug than the one appellant was charged with. See note 2 supra. Trial counsel also argued that evidence of the bare quantity of the drug seized at appellant’s home[4] was insufficient by itself to support an inference of intent to distribute because it lacked context and the government had presented no evidence “that refutes the fact that this is consistent with personal use ....”[5] Counsel pointed out that such *98 evidence was particularly important in a case where the drugs-were not packaged for sale and there was scant evidence of the drug-selling paraphernalia (e.g., bags, ledgers) that routinely supports an inference of intent to distribute. In the posttrial motion, appellate counsel made the same arguments on both points that had been made during trial, supported those arguments with affidavits from experts, and asked the trial cohrt to reopen the record “to take additional testimony” after a bench trial, as expressly provided .for in Rule 33. Thus, there was no change in the defense’s tactics, only further evidentiary support for the arguments previously made to the court.
Moreover, it was not “too late” as there was no delay in filing the motion. Trial counsel told the judge during trial that in' the event of an adverse judgment, appellant would be filing a motion for new trial. Appellant timely asked for an extension within the seven-day time' limitation set' out in Rule ‘ 33 to file a motion to be considered under the more liberal “interest of justice” standard, without objection by the government. The trial court granted the extension and’ the motion was filed within the time allowed by the judge. In short, the record does not support that the motion presented a “change in tactics” and was “too late.” Thus, the trial court should reconsider the motion without taking into account these unsupported factors. See Geddie v. United States, 663 A.2d 531, 534 (D.C. 1995) (“[Generally the factual record must be capable of supporting the determination reached by the trial court.”). ’
Moreover, unlike under the “newly discovered” evidence standard, delay is not a primary focus under the interest of justice standard. See Brodie v. United States, 295 F.2d 157, 160 (D.C. Cir. 1961); Sellars v. United States, 401 A.2d 974, 979 (D.C. 1979) (noting that, though the decision whether to grant' a new trial under the interest of justice standard is committed to the trial court’s discretion and should be “temperately ... utilized,” the standard to be applied is “broader in scope than the limitations which have been held applicable where the motion is based on newly discovered evidence” (quoting Benton v. United States, 188 F.2d 625, 627 (1951))). This is sensible because, to be considered under the interest of justice standard, the motion has to be filed within seven days of the finding of guilt, whereas in the ease of a later-filed, newly discovered evidence motion (up to three years), “the passage'of time inevitably ripens the finality of the judgment and increases the difficulty of again proving a case.” Brodie, 295 F.2d at 159-60. Judge Fisher’s opinion properly rejects the governrhent’s suggestion that the newly discovered evidence standard should be applied in this case and purports to usé the interest of justice standard. Yet it approves of the trial court’s comment that the motion was a posttrial change of tactics that came too late as reasons for denying the new trial motion, relying on Brodie for the proposition that “lack of diligence” can be taken into account under the interest of justice standard. As the court made clear in Brodie, however, diligence is “but one of a number of factors to be considered,” and may not be “controlling.” Id. at 159. In Brodie, the appellate court reversed and remanded the denial of a motion for new trial because it appeared to have been driven by the “due diligence” standard rather than upon consideration of the facts of the case against the ultimate consideration: whether “a fair trial requires” that the evidence proffered with the motion for new trial be considered by the fact-finder. Id.
The evidence. In deciding what the interest of justice requires, “the facts are of critical importance.” Id. at 158. Here, the trial court concluded, without holding a *99 hearing, that the “new assertions [presented in appellant’s motion] even if presented at trial, would not have resulted in a different verdict.” On this record, that conclusion is far from evident,
A remand for clarification is necessary to reconcile the court’s guilty verdict and its subsequent denial of the new trial motion after being presented with additional evidence that contradicted evidence on which the original verdict was based. In finding appellant guilty of possession with intent to distribute MDMC, the trial court relied on two different strands of evidence from which intent to distribute could be inferred: (1) five texts on appellant’s cellphone in which he referred to “molly” and other drugs he was selling to friends and (2) the quantity of MDMC that was found in his home. The trial court acknowledged that neither one sufficed, stating that although “the quantity alone might not be enough, [and] the text messages alone might not be enough, ... together they clearly constitute proof beyond a reasonable doubt.” (Emphasis added.)
The trial court’s assessment that each of the individual strands of evidence was by itself insufficient to convict was well taken. The texts were not particularly strong evidence of appellant’s intent to distribute as none referred specifically to MDMC but to a different drug, MDMA. Moreover, even if, as Detective Thomas had testified (but defense counsel vigorously disputed), “molly” referred to MDMC, the texts mentioning “molly” were sent during á 3-5-week period in May-June that significantly predated, by three months, the seizure - of MDMC during a search at appellant’s home in September on which the charges were based. There were no texts referring to “molly” that corresponded to the time when the government proved appellant possessed MDMC. The inference of intent to distribute from the quantity of the drug seized also was inherently weak because it was presented without any physical evidence, such as packaging or supplies that corroborated that the MDMC was being sold or prepared for sale. Instead, the government’s witness, Danielle LaVictoire, merely made a straightforward mathematical calculation that the 8.2 grams found in a plastic bag could be divided into- 82 capsules of .1 gram. This calculation was apparently based on the fact that two capsules with a total of .19 grams were found at the house, although there was no evidence presented of the quantity of MDMC in each capsules. However, there was no cache of empty capsules or evidence that the powder was being transferred into capsules for distribution, nor was there any expert evidence that a capsule containing .1 gram of MDMC was marketable as such.
With' the motion for new trial, appellant submitted the sworn affidavits of two experts.[6] They stated that “molly” was a term used to refer to MDMA, not MDMC. This testimony—"which was unrebutted by the government in the posttrial motions proceeding—directly contradicted Detective Thomas’s trial testimony that the use *100 of “molly” in appellants’ stale text messages referred to MDMC. The expert affidavits also supported the argument made at trial by defense counsel that possession of the MDMC found at appellant’s home could be consistent with personal use.
In addition to dismissing the evidence presented in appellant’s motion as a “change in tactics” that was “too late,” the trial court disposed of the request to vacate judgment, take new evidence, and enter new judgment for misdemeanor possession of MDMC by concluding that, “these new assertions, even if presented at trial, would not have resulted in a different verdict.” As already discussed, the assertions were not “new” as both were presented during trial. What was new was the expert evidence presented in support of those arguments. The trial court had said, in finding appellant guilty, that the evidence of texts with references to “molly” was insufficient by itself to find appellant guilty of intent to distribute MDMC and had similarly expressed that the evidence of the quantity of the MDMC, by itself, was insufficient for an inference of intent to distribute. Thus, both were necessary, in the trial court’s view, for a finding of guilt beyond a reasonable doubt. The expert evidence submitted with the motion for new trial confirmed the trial court’s assessment that each strand of the government’s evidence to prove intent to distribute was indeed insufficient on its own to support a finding of guilt. Yet, when faced with additional proof that further undermined the government’s case, and without having heard the witnesses whose testimony had been proffered in sworn affidavits, the trial court summarily concluded their evidence would not have made a difference. In this bench trial, it would have been relatively easy to reopen the record to admit such important evidence. It is difficult to reconcile the trial court’s summary denial of the request for new trial or to admit the proffered testimony as being in the interest of justice in light of its recognition of the deficiencies in the government’s case and stated reasons for the finding of guilt.
The facts of the case warranted a more searching examination. The government’s case that appellant had the intent to distribute MDMC was based on weak and circumstantial evidence. Appellant’s Rule 33 motion presented expert evidence that directly contradicted Detective Thomas’s testimony that “molly” is MDMC; the trial court had recognized this problem, referring to the “confusion” in Detective Thomas’s testimony.[7] The affidavits took specific aim at Ms. LaVictoire’s testimony that the 8.2 grams of MDMC would yield 82 capsules and, more importantly, cast doubt on whether even that number of capsules would be inconsistent with personal consumption by appellant, who was shown to be a drug user.[8] The trial court did not say *101 that the proffered witnesses were unqualified or that their affidavits were on their face incredible. Nor could the trial court have relied on countervailing evidence, as the government did not present any evidence in its opposition to the posttrial motion to rebut appellant’s expert witnesses. Cf. Tyer v. United States, 912 A.2d 1150, 1167 (D.C. 2006) (noting with respect to recantations proffered posttrial, that “if the trial court does not deem the recantation credible, that determination ends the inquiry” under the interest of justice standard). The trial court did not explain why this expert evidence, which supported that appellant’s texts did not refer to the sale of MDMC and that the MDMC appellant possessed was consistent with his personal use, would not have resulted in a different finding of intent to distribute.[9] If credited by the trial court, appellant’s proffered evidence would require acquittal of the felony conviction on the charge of PWID MDMC and warrant entry of judgment for misdemeanor possession of MDMC. Presented with evidence that had the potential to dictate a different result, it is not enough simply to say, without explanation and in evident tension with an earlier assessment of the government’s case, that the proffered evidence would not have made a difference even if it had been presented at trial. Careful consideration of such critical evidence surely is a requirement in determining the interest of justice. See Prophet v. United States, 707 A.2d 775, 779 (D.C. 1998) (affirming denial of Rule 33 motion after noting that trial court “not only gave careful consideration to the motion but explained in detail the reasons for its ruling”).
For these reasons, I would remand the case for further consideration and clarification by the trial court and, as appropriate, a hearing so that the trial court can assess the weight of the expert evidence presented with the Rule 33 motion.[10] Otherwise, this court’s review on appeal is a meaningless exercise. See Portillo v. United States, 62 A.3d 1243, 1257 (D.C. 2013) (stating that the trial court “shall make finding of *102 fact on the record sufficient to allow meaningful appellate review”).

. MDMC is methylenedioxy-methcathinone hydrochloride. Its distribution or possession with intent to distribute is a felony, see D.C. Code § 48-904.01 (a)(1) (2012 RepL), but its simple possession is a misdemeanor. See Thomas v. United States, 650 A.2d 183, 184 (D.C. 1994). Appellant does not challenge the finding that he possessed MDMC; his appeal concerns only the finding of intent to distribute.

. A government witness, Detective George Thomas, testified that “molly” referred to the drug MDMC. Detective Thomas’s testimony was relevant to the charge of PWID MDMC because some three months before appellant was found to possess MDMC, he had sent *97 texts offering to sell “molly.” Whether appellant was referring to MDMC when he said "molly” was therefore circumstantial evidence of his intent to sell MDMC in the past, even if it did not directly support that he intended to sell the MDMC which he was charged with possessing three months later.

.Appellant's motion did not refer to the third basis for a new trial under Rule 33, the availability of "newly discovered” evidence, which may be filed Up to three years after judgment, Super. Ct. Crim. R. 33 (b)(2), nor has appellant ever suggested that the evidence submitted with his motion met the requirements for newly discovered evidence. The trial court did not refer to the standard for newly discovered evidence. Yet the government argued in the trial court and argues in this court that the casé law relevant to newly discovered evidence is relevant to the motion filed in this case.

. The MDMC seized at appellant’s home was in one plastic bag, weighing 8.2 grams, two capsules that contained a total of .19 grams and a partial tablet containing .2 grams.

. Trial counsel argued:
The [government] expert talked about Ecstasy and then MDMC and then talked about what he told me was Methyolone.... But that is diluted to the point where he said—he agreed with me that it was sort of diluted Ecstasy. So in order to get high from the drug, one would have to use more. So if there’s eight grams, somebody would be using a significant amount of significantly more of the drug since diluted, you need more to get high.

. The experts were Wayne C. Duer, Ph.D. Chemistry, American Academy of Forensic Sciences member, who has published thirty-seven articles in peer-reviewed scientific journals and worked in forensic toxicology for thirty-seven years, including the Florida Department of Business Regulation (ten years), the'Florida Department of Law Enforcement (seven years) who certified him as a forensic chemist and toxicologist, the Hillsborough County, Tampa, Florida Medical Examiner's Department (fifteen years), and as a private expert consultant (five years); and Michael Radon who has forty years’ of professional experience in the drug and alcohol counseling, ^detoxification and rehabilitation field, which has included over 1,000 bio-psych-social assessments requiring familiarity with drug street names.

. Judge Fisher’s opinion cites four decisions from other jurisdictions "indicating that ‘molly’ has been used to refer to MDMC.” See ante at note 8. As there noted, the trial court in the case before us was not made aware of these decisions, nor was the evidence presented in those cases presented to the trial court here. The government has not cited these cases on appeal. It is unclear whether and, if so, how, these citations are to figure into our consideration of the trial court's denial of appellant’s Rule 33 motion.

. Appellant had a history of prescribed amphetamine drug use, having over 800 pills prescribed and the government finding 138 of them. As noted by the expert affidavits, use of certain drugs results in the user developing a tolerance for MDMC, especially if they have a history of taking amphetamines. Accordingly, given appellant's history of prescribed amphetamine drug use and the government’s failure to prove beyond a reasonable doubt that appellant was not a heavy user of MDMC, the 8.2 grams of MDMC in his pos *101 session could be consistent with appellant’s personal use.

. Likewise, the majority opinion does not deal with the substance of the experts’ affidavits.

. Appellant argues that the trial court erred as a matter of law by applying an incorrect standard—clear and convincing instead of beyond a reasonable doubt—when it stated that “the evidence is still clearly convincing that MDMC was possessed with the intent to distribute.” I do not believe that the trial court's comment should be read as confusing the standard for a finding of guilt beyond a reasonable doubt because it was made in the context of the motion for new trial, where appellant has the burden to persuade the judge.
The trial court did make a puzzling comment in explaining its guilty verdict, however. Concerning the defense argument that there was no evidence that the MDMC seized at appellant's home was inconsistent with personal use, the trial court countered that there was no evidence that appellant was "a fiend.” Presumably this meant that only a very heavy user or highly addicted person could possibly have that quantity for personal consumption. But it was not the defense’s burden at trial to establish that appellant possessed the drugs for personal use. In the absence of any physical evidence of intent to distribute, it remained the government’s burden to prove beyond a reasonable doubt that the quantity of drugs was inconsistent with personal use by the appellant. However, the government presented no evidence at trial about the usual dose of MDMC, or how often it may be consumed, or appellant’s likely consumption. With the Rule 33 motion, when he had the burden to persuade the trial court, appellant presented expert evidence that MDMC is ten times less potent than MDMA; that users develop a tolerance to the drug; that the effect of MDMC is relatively short-lived and that, as a result, users consume MDMC repeatedly to maintain a high. There was ample evidence presented at trial that appellant possessed and used a number of drugs.